**Leonard T. BROWN, et al., Plaintiffs,**

v.

**Thomas EICHLER, et al., Defendants.**

**Civ. A. No. 84–582–CMW.**

United States District Court,
D. Delaware.

Feb. 26, 1988.

actions to be more reasonable than they otherwise appear to the Court.

John X. Denney, Jr., and Sandra E. Messick, UAW Legal Services Plan, Newark, Del., for plaintiffs.

John J. Polk, Laurence V. Cronin, and Patricia A. Dailey, Deputy Attys. Gen., Dept. of Justice, Wilmington, Del., for defendants.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

This Motion for an Award of Attorneys' Fees arises out of a challenge to the constitutionality of Delaware's Tax Refund Intercept Program ("TRIP"). The TRIP program provides a means by which the State can enforce the payment of child support obligations assigned to it. Under the TRIP program, if a parent is delinquent in his or her child support payments to the State, the State may intercept his or her federal income tax refund and use it to settle the parent's obligations. Plaintiffs, a group of parents who received notices that their tax refunds would be intercepted, filed suit under 42 U.S.C. § 1983 (1982) in this Court on October 10, 1984. They claimed that the TRIP program deprived them of their tax refunds without due process of law.

This Court ruled that some aspects of the TRIP program were unconstitutional. *Brown v. Eichler*, 664 F.Supp. 865 (D.Del. 1987). The Court held that the form of notice given to obligated spouses was unconstitutional because it failed to list the defenses available for challenging the interception. The Court ordered the defendants to prepare a new notice and to re-do the hearings conducted during 1984 through 1987 based on the unconstitutional notice. *Brown v. Eichler*, C.A. No. 84–582–CMW, Order of June 11, 1987, ¶¶ 4, 7. The Court also held that the notice sent to non-obligated spouses, the current spouses of parents who owe child support payments, was constitutional. *Id.* ¶ 3. Finally, the Court held that the hearing procedure currently used, one that differed from the one in use at the onset of this litigation, was constitutional. *Id.* ¶ 2.

## I. PLAINTIFFS' MOTION

Plaintiffs filed this Motion for an Award of Attorneys' Fees on July 31, 1987. They also filed affidavits describing the work done by the four counsel for the plaintiffs: John X. Denney, Jr., Sandra E. Messick, Thomas J. Motter, and Stuart B. Drowos. All four counsel are employed by the UAW Legal Services Plan, a non-profit prepaid legal services plan. Plaintiffs request a total fees award of $58,982.50.

Defendants did not file an answering brief but instead filed objections to plaintiffs' petition and requested a hearing. Plaintiffs then filed a Motion for Sanctions against the defendants for failing to file an answering brief. The Court conducted a hearing on September 28, 1987. The Court held that sanctions were unwarranted and that plaintiffs' affidavits and brief were not sufficient for the Court to determine what a reasonable fee was. *Brown v. Eichler*, C.A. No. 84–582–CMW, slip op. (D.Del. Sept. 30, 1987) [Available on WESTLAW, 1987 WL 18092]. The Court ordered the parties to engage in discovery "to understand further the time charges, to relate the time charges to specific issues in the case, and to get a better idea of the fees charged through the years by attorneys in this area and by legal services centers in Wilmington." *Id.* at 1–2. Defendants have since deposed Sandra E. Messick and

John X. Denney, Jr., and the parties have finished briefing the Motion.

After filing this Motion, plaintiffs continued to seek enforcement of the Court's Order. The Court issued a Rule to Show Cause why the defendants should not be held in contempt for failing to petition the Court to approve a new notice. The Court held a hearing on December 3, 1987, and held that the defendants were not in civil contempt of this Court. *Brown v. Eichler*, C.A. No. 84–582–CMW, slip op. (D.Del. Dec. 21, 1987) [Available on WESTLAW, 1987 WL 35800]. The Court approved a supplemental notice on December 3, 1987. *Brown v. Eichler*, C.A. No. 84–582–CMW, Order of Dec. 3, 1987. On February 17, 1988, plaintiffs filed a Supplemental Motion for Attorneys Fees. That Motion will be considered in a separate opinion. Thus, aside from assessing costs and determining what fees plaintiffs' counsel deserve for pursuing this fee petition, this petition is all that remains of this litigation.[1]

## II. ATTORNEYS' FEES

Plaintiffs seek attorneys' fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (1982). The Act provides that in actions brought under 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988.

The inquiry into what a reasonable fee is in a particular case is very fact-specific. The first step is to determine whether a plaintiff is a "prevailing party." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). This occurs when a plaintiff "succeeds on any significant issue in litigation which achieves some of the benefits the parties sought in bringing suit." *Id.* (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978)).

Next, the Court must determine what fee is "reasonable." The initial step is to ex-

amine "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. This "lodestar" is presumed to be the reasonable fee. *City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986). However, the figure can be adjusted either upward or downward to compensate for other factors including the contingency of success, *Lindy Bros. Bldrs., Inc. of Phila. v. American Radiator and Std. Sanitary Corp.*, 487 F.2d 161, 168–69 (3d Cir.1973), or duplication of work. *Daggett v. Kimmelman*, 811 F.2d 793, 797–98 (3d Cir. 1987).

### A. Prevailing Parties

█ Plaintiffs prevailed on at least one significant issue, the unconstitutionality of the notice sent to obligated spouses, and are thus prevailing parties who deserve an award of some amount of attorneys' fees. *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. However, if the plaintiffs "achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436, 103 S.Ct. at 1941. Because of this, the Court has the discretion to either identify and eliminate specific hours spent on unsuccessful claims or reduce the total amount of the fee award to reflect plaintiffs' limited success. *Id.* To determine whether to reduce the award to reflect partial success, the Court must examine the success of plaintiffs' *claims* for relief, not the success of the individual theories professed or motions filed. *Institutionalized Juveniles v. Secretary of Public Welfare*, 758 F.2d 897, 911 (3d Cir.1985).

Plaintiffs sought constitutional relief on three fronts: the notice to obligated spouses, the rights of non-obligated spouses, and the hearing procedure. Plaintiffs clearly prevailed on their claim that the notice sent to obligated spouses was unconstitutional.

---

**1.** The Court notes that a subsequent suit, *Clayton v. Eichler*, C.A. No. 87–574–CMW, was filed to cure alleged constitutional violations occurring after the Court's Order of June 11, 1987. That case concerns the same program and the same defendants as the instant case but is not formally connected to this suit.

However, it is also clear that plaintiffs did not prevail on their claim concerning the rights of non-obligated spouses. Whether plaintiffs prevailed on their claim that the hearing procedure was unconstitutional requires closer scrutiny.

■ Delaware changed its hearing procedure after plaintiffs instituted this suit. It is established that plaintiffs can be prevailing parties if their claim was mooted during the litigation because the legislature changed the program. *Institutionalized Juveniles*, 758 F.2d at 911. To be prevailing parties, plaintiffs must establish that the litigation was a "material contributing factor" to the change in procedure. *Id.* at 916.

Plaintiffs claim that the instant litigation sparked the changes in the hearing procedure that occurred during the suit. Defendants deny this and argued during oral argument that the changes were a direct result of changes in the federal regulations governing the TRIP program. The Court believes that, under the expansive definition of causation advocated in *NAACP v. Wilmington Medical Center, Inc.*, 689 F.2d 1161 (3d Cir.), *reh'g denied*, 693 F.2d 22 (1982), *cert. denied*, 460 U.S. 1052, 103 S.Ct. 1499, 75 L.Ed.2d 930 (1983), plaintiffs have shown some causal link. Because the ultimate relief sought from the defendants was that the program be constitutionally run, plaintiffs did obtain some relief. Thus, the fact that plaintiffs did not "win" on the issue of the constitutionality of the hearing procedures does not mean that the lodestar should be reduced.

■ On the other hand, plaintiffs do not claim that non-obligated spouses received any relief from this suit. The Court held that their rights were not violated and the State did not change its procedures concerning non-obligated spouses. Thus, plaintiffs were not prevailing parties on that issue and the lodestar should be reduced by an appropriate amount.

### B. Lodestar

Plaintiffs have the burden of documenting and proving that the fees they request are reasonable. *Hensley*, 461 U.S. at 437,

103 S.Ct. at 1941. The lodestar is the product of the hours contributed to the case and the reasonable hourly rate. Plaintiffs claim that the combined effort of counsel was 444.1 hours. They also claim that a reasonable rate for Mr. Denney is $150 per hour, and that a reasonable rate for the other attorneys is $125 per hour. Thus, they seek fees of $58,982.50. The Court will address the reasonableness of the hours and the rates separately.

### 1. Hours

Defendants challenge the reasonableness of the hours requested, both from the standpoint of how they were documented and from the standpoint of what the charges were. Defendants challenge specific charges related to the time recorded for conducting depositions, for reviewing files in the Family Court, and for travel to and from depositions and arguments. The Court holds that these charges are reasonable. It is reasonable to charge for travel and preparation time concerning depositions and arguments. It is also reasonable to charge for the time spent reviewing Family Court documents because that is where the records pertaining to the plaintiffs' child support payments are kept.

■ The Court finds, however, that the documentation of the hours in counsels' affidavits is inadequate. More than 50 hours of time is charged to "conference with other UAW staff." Many hours are also billed to "legal research" or "letter to client". These entries are not identified with motions, issues, or even clients, something which is significant in light of the fact that several plaintiffs were dismissed from this case. This lack of clarity exists even after this Court instructed the parties to engage in discovery "to understand further the time charges, [and] to relate the time charges to the specific issues in the case." *Brown v. Eichler*, C.A. No. 84–582–CMW, slip op. at 1–2 (D.Del. Sept. 30, 1987) [Available on WESTLAW, 1987 WL 18092]. The Court will reduce the lodestar amount to reflect the inadequacy of this reporting

of hours. *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939.

The lodestar should also be reduced because the administrative structure of counsels' office leads to excessive charges. Counsels' office consists of several attorneys and a few secretaries. There are no messengers or "runners." Consequently, counsel have charged $125 or $150 per hour for time spent delivering briefs or waiting for the defendants to deliver a brief.

The Third Circuit has stated:

Nor do we approve the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals or less experienced associates. Routine tasks, if performed by senior partners in large firms, should not be billed at their usual rates. A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn.

*Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir.1983). The lodestar figure should be reduced accordingly to reflect a reduction in the amount charged for performing these menial tasks.

### 2. Rates

Plaintiffs request that Mr. Denney receive $150 per hour for his time and that the other three counsel receive $125 per hour for their time. Counsel all work at the UAW Legal Services Plan and are salaried employees. However, counsel should receive fees at the prevailing market rates even though they work out of a prepaid legal services plan. *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

Plaintiffs' counsel did not submit the rates awarded in civil rights cases to other Wilmington law firms or legal aid services in order to prove the prevailing rate. Instead, counsel submitted a report by Community Legal Services of Philadelphia that describes the rates their attorneys use when seeking an award of attorneys fees. Because Philadelphia is a larger market where generally higher fees are charged, counsel chose rates in the middle of the relevant experience brackets. Defendants questioned these rates but failed

to submit alternative rates awarded in Wilmington. They only cited to the rates awarded in a single case in this District where the parties stipulated to the hourly rates. *Rollison v. Biggs*, 656 F.Supp. 1204 (D.Del.1987).

The rates proposed by plaintiffs' counsel are reasonable. Plaintiffs' counsel are well experienced. Furthermore, it is now 1988 and these fees were proposed by Community Legal Services for use in Philadelphia in 1985. The inflation of fees charged during the three year interim period serves to offset the differences between the Wilmington and Philadelphia legal markets. Thus, the proposed rates are reasonable.

### 3. Delay and Historic Rates

Plaintiffs request an increase in the lodestar figure to compensate for the delay in receiving the fee award. This increase would reflect the opportunity cost caused by the time value of money because the fees would be awarded in a lump sum after the suit rather than contemporaneously as earned. Defendants, on the other hand, request a decrease in the lodestar figure because plaintiffs are requesting that the fees be paid at the current prevailing rates rather than at the historic rates which would have been charged at each stage of the litigation. *Daggett*, 811 F.2d 793.

Both of these claims are legitimate. However, both are also ambiguous and complex. They are made even more complex because counsel do not have a set fee structure that would have been applicable to each stage of the litigation. The Court will not make any adjustments to the lodestar amount to reflect either effect because the two effects tend to cancel each other out. *See Institutionalized Juveniles*, 758 F.2d 897, 923 n. 41 (3d Cir.1985) (offsetting delay with historic rates may be appropriate because it is straightforward).

### III. CONCLUSION

The Court will exercise its discretion to reduce the lodestar figure rather than eliminate the specific hours spent on unsuccessful claims. This is because counsel did not report their time in such a way as to enable the Court to determine what time was spent on the unsuccessful claims

and the discovery ordered by the Court did not result in clarification of the charges.

The Court thus awards plaintiffs' counsel $39,321.67, two-thirds of the requested amount. The one-third reduction in fees represents the reduction for being only partially prevailing parties and the reductions for inadequate reporting and overcharging for basic tasks. A reduction of this magnitude is proper because plaintiffs did not prevail in challenging the rights of non-obligated spouses, one of the three major claims in this suit. While the rights of non-obligated spouses may not account for a full one-third of the suit, the reduction also takes into account the inadequate reporting of hours, the use of attorneys as messengers, and any doubts as to whether plaintiffs' suit was indeed a material contributing factor to the change in the hearing procedure.

An Order will issue in accordance with this Opinion.