**CENTRAL DELAWARE BRANCH of the NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE (NAACP) and Cecil C. Wilson, Plaintiffs,**

v.

**CITY OF DOVER, Delaware; Dover City Council; Mayor Crawford J. Carroll; Dover Election Commission, Defendants.**

Civ. A. No. 85–230–JLL.

United States District Court,
D. Delaware.

Oct. 28, 1988.

Theopalis K. Gregory of Gregory & Gregory, Wilmington, Del., Grover G. Hankins, Gen. Counsel, Dennis Courtland Hayes and Everald Thompson, Asst. Gen. Counsels, NAACP, Nat. Headquarters Sp. Contribution Fund, Baltimore, Md., of counsel, for plaintiffs.

Nicholas H. Rodriguez and William W. Pepper of Schmittinger & Rodriguez, P.A., Dover, Del., for defendants.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

## I. BACKGROUND

In this action the Central Delaware Branch of the National Association for the Advancement of Colored People (NAACP) and Cecil C. Wilson ("plaintiffs") challenged the at-large method of electing members to the City Council of the City of Dover, Delaware, as violative of Section 2 of the Voting Rights Act of 1965, 42 U.S.C. § 1973, as amended, and the Fourteenth Amendment. (Docket Item ["D.I."] 1.) Named as defendants were the City of Dover (the "City"), the Dover City Council, Dover Mayor Crawford J. Carroll, and the Dover Election Commission.

Pursuant to a Consent Order approved by this Court on March 18, 1988 (D.I. 74), the parties agreed that the City would, *inter alia*, take steps to implement the following measures:

1. Expand the size of the City Council from eight to nine members (excluding the Mayor);

2. Elect eight of the nine City Council members (two from each of four election districts) by district voting rather than by at-large voting;

3. Draw new election districts such that one of the four election districts contains at least a 65% black population;

4. Eliminate the City's dual registration system, so that proper registration by a voter for State elections will be given equal effect for purposes of City elections.

(D.I. 74 at 2–5.) Following the Court's approval of the foregoing relief, plaintiffs moved for an award of attorneys' fees and costs under 42 U.S.C. § 1988 (permitting awards of attorneys' fees to the prevailing party in civil rights litigation generally) and § 1973l (e) (authorizing awards of attorneys' fees to the prevailing party in voting rights cases).[1] (D.I. 80.) This motion is now before the Court.

Plaintiffs seek $57,502.00 for attorneys' fees incurred in pressing their voting rights claims. (D.I. 80, as amended to correct for computation errors, by D.I. 87 at 5.) Plaintiffs request additional attorneys' fees of $4,125.00 for pursuing the instant fee application. (D.I. 89 at 32.) Plaintiffs also request $27,921.52 as reimbursement for out-of-pocket expenses incurred in prosecuting the underlying voting rights claim (D.I. 80 at 3), and another $981.00 in costs for the fee application (D.I. 89 at 32–33), for a total of $28,902.52.

A party's recovery under the fee statutes is conditioned upon that party being a "prevailing party." *See* 42 U.S.C. §§ 1973l (e), 1988; Fed.R.Civ.P. 54(d). Defendants concede that the plaintiffs are prevailing parties in this action, by virtue of the relief plaintiffs obtained from the settlement and the corresponding Consent Order. (D.I. 84 at 6.) *See also Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed. 2d 40 (1983); *Maher v. Gagne*, 448 U.S.

---

1. Also pertinent to this motion are Fed.R.Civ.P. 54(d) (calling for an award of costs to the prevailing party in federal litigation generally) and

28 U.S.C. § 1920 (detailing which costs may be properly awarded).

122, 129–30, 100 S.Ct. 2570, 2574–75, 65 L.Ed.2d 653 (1980); *Hanrahan v. Hampton*, 446 U.S. 754, 757–58, 100 S.Ct. 1987, 1989, 64 L.Ed.2d 670 (1980). Defendants challenge plaintiffs' motion for fees and costs on the grounds that the amounts sought are excessive, unreasonable, duplicative and inadequately documented. (D.I. 84 at 2.) Defendants also question whether certain categories of expenses are recoverable at all (under case law and the local rules), and further argue that plaintiffs waived their claims for reimbursement of costs by failing to file for costs within ten days after execution of the March 18, 1988 Consent Order. (D.I. 84 at 3.) The Court will consider, in turn, plaintiffs' requests for attorneys' fees and for costs.

## II. ATTORNEYS' FEES

### A. *Introduction*

Plaintiffs' request for attorneys' fees is grounded upon 42 U.S.C. § 1988 and § 1973*l* (e). Section 1988 provides: "In any action or proceeding to enforce [various civil rights provisions], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." In a similar vein, § 1973*l* (e) provides: "In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of costs." Courts have construed these two fee statutes similarly. *See, e.g.,* H. Newberg, *Attorney Fee Awards* § 14.01, at 317 & n. 10 (1986).

Both statutes vest discretion in the Court in setting fee awards.

Given plaintiffs' status as prevailing parties, the process of determining the appropriate fee reduces to the following tasks: First, the Court must ascertain the number of hours reasonably expended on the litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). Next a reasonable hourly rate is computed. *Id.* The two figures are then multiplied together to yield an initial estimate of the value of a lawyer's services (also known as the "lodestar"). *Id. See also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563–65, 106 S.Ct. 3088, 3097–98, 92 L.Ed.2d 439 (1986); *Blum v. Stenson*, 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed. 2d 891 (1984). Lastly, the Court may adjust the lodestar figure upward or downward as may be appropriate in the circumstances. *Blum v. Stenson*, 465 U.S. at 897, 104 S.Ct. at 1548; *Hensley v. Eckerhart*, 461 U.S. at 434, 103 S.Ct. at 1939.

The fee applicant bears the burden of proving the time/rate elements of a reasonable fee. *Blum v. Stenson*, 465 U.S. at 896 n. 11, 897, 104 S.Ct. at 1547 n. 11, 1548; *Hensley v. Eckerhart*, 461 U.S. at 437, 103 S.Ct. at 1941. The fee opponent, however, must present specific evidence challenging the reasonableness of the requested rates or the time expended. *Blum v. Stenson*, 461 U.S. at 892 n. 5, 104 S.Ct. at 1545 n. 5. It cannot rely upon conclusory denials of the applicant's prima facie proofs.

In the instant case, plaintiffs request that the lodestar figure be calculated as follows:

| Attorney | Hours Requested | Requested Hourly Rate | Amount |
|---|---|---|---|
| In litigating the underlying voting rights claim: | | | |
| Grover G. Hankins | 3.45 | $200.00 | $ 690.00 |
| Dennis Courtland Hayes | 264.23 | 150.00 | 39,634.50 |
| Michael H. Sussman | 72.70 | 150.00 | 10,905.00 |
| Audrey B. Little | 17.15 | 150.00 | 2,572.50 |
| Everald Thompson | 8.00 | 150.00 | 1,200.00 |
| Theopalis K. Gregory | 25.00 | 100.00 | 2,500.00 |
| Subtotal | | | $57,502.00[2] |

2. D.I. 80 at 2 (as amended to correct for computational errors); D.I. 84 at 4; D.I. 87 at 5.

| Attorney | Hours Requested | Requested Hourly Rate | Amount |
|---|---|---|---|
| In requesting award for fees and costs: | | | |
| Dennis Courtland Hayes | 19.50 | 150.00 | $ 2,925.00 |
| Charles E. Carter | 8.00 | 150.00 | 1,200.00 |
| Subtotal | | | 4,125.00[3] |
| Total | | | $61,627.00 |

Plaintiffs also request (and defendants oppose) an enhancement of the lodestar amount. (D.I. 79 at ix; D.I. 84 at 19–20.)

### B. *Hours*

Having considered the parties' written submissions and oral arguments, the Court holds that the hours expended by plaintiffs' counsel were reasonable and proper, and will be awarded in full except as noted below.

■ Defendants state that the "time records" submitted by plaintiffs do not support all of the requested hours. (D.I. 84 at 8.) Plaintiffs requested 264.23 hours for Mr. Hayes, but documented only 231.73 hours. Similarly plaintiffs seek 72.70 hours for Mr. Sussman, but have supplied records covering only 62.42 hours.[4]

While "acknowledg[ing] their burden to support their fee request," (D.I. 87 at 1), plaintiffs have not confronted defendants' specific challenge to the undocumented hours, either in their opening brief (D.I. 79) or in their reply brief (D.I. 87). The Court will therefore reduce the award for the hours not documented: 32.5 hours for Mr. Hayes; 10.28 hours for Mr. Sussman. *See Hensley v. Eckerhart*, 461 U.S. at 433, 103 S.Ct. at 1939; *Brown v. Eichler*, 680 F.Supp. 138, 142 (D.Del.1988).

■ Defendants also request the Court to reduce the award for Mr. Hayes by 28.75 hours, reflecting time spent by Mr. Hayes in connection with defendants' motion to dismiss for failure to prosecute.[5] (D.I. 84 at 12.) This Court found enough justification for plaintiffs' neglect in prosecuting this action so as to deny the motion to dismiss. (D.I. 41 at 8.) Nonetheless the Court found plaintiffs' tactics sufficiently blameworthy to warrant alternative sanctions—namely, the imposition of fees and expenses. *Id.*

Defendants' objection is well taken. Plaintiffs offer no counter-argument. The Court cannot conclude that Mr. Hayes' time spent in defending the motion to dismiss for failure to prosecute was "reasonably expended" in advancing plaintiffs' claim, or that those hours should be taxed to defendants. *See Hensley v. Eckerhart*, 461 U.S. at 434, 103 S.Ct. at 1939 (citing S.Rep. No. 94–1011, p. 6 (1976), U.S.Code Cong. & Admin.News 1976, p. 5908). Accordingly, the award for Mr. Hayes' services will be reduced by 28.75 hours.

The Court also notes the last two entries in plaintiffs' time log which seek to charge twelve hours of Mr. Hayes' time as follows: (1) six hours on May 28, 1988 preparing the motion for attorneys' fees, and (2) six hours as of June 1, 1988, for *estimated future* actions required. (D.I. 79, Ex. B.) At the September 21, 1988 evidentiary hearing, Mr. Hayes indicated that he had worked 19.5 hours on plaintiffs' fee petition, and made no mention of any other time expended since June 1, 1988. (D.I. 89 at 32.) Presumably the final twelve hours for Mr. Hayes in the initial fee request are included within the 19.5 hours accumulated as of September 21. The fee award for Mr. Hayes will therefore be reduced by another twelve hours.

In sum, the hours sought by plaintiffs will be allowed in full except for reductions of 73.25 hours for Mr. Hayes and 10.28 hours for Mr. Sussman. The Court will now determine the appropriate rate at which those hours will be compensated.

---

3. *See* D.I. 89 at 32.

4. The Court has verified the accuracy of defendants' calculations. Plaintiffs' time log appears at D.I. 79, Ex. B.

5. The Court has confirmed the accuracy of the 28.75 hours. The figure was gleaned from information contained in D.I. 84A at A–4.

## C. *Hourly Rates*

■ Plaintiffs' fee application seeks payment for attorneys' time at rates ranging from $100 to $200 per hour.[6] Plaintiffs bear the burden of establishing the reasonableness of the requested rates. *Blum v. Stenson*, 465 U.S. at 896 n. 11, 897, 104 S.Ct. at 1547 n. 11, 1548; *Hensley v. Eckerhart*, 461 U.S. at 437, 103 S.Ct. at 1941.

In support of their fee request, plaintiffs have submitted an affidavit of Delaware attorney Sheldon Sandler.

In my view ... a lawyer involved in a complex federal case (which I believe any voting rights case is) in Delaware on behalf of a non-retainer client, would be able to charge a reasonable fee of approximately $150 per hour for an experienced attorney (at least 12–15 years experience), $125 per hour for a somewhat less experienced attorney (at least 8–10 years), $100 per hour for a more junior attorney (at least three years experience) and $75 per hour for a new attorney (less than three years). Obviously, many attorneys charge less than this, but some charge more, and I think these rates are frequently charged and are regarded as reasonable.

(D.I. 87, Ex. L, ¶ 4.)

The Court finds Mr. Sandler's affidavit to be highly probative and informative. In fact defendants themselves describe Mr. Sandler as "one of the most respected and experienced civil rights attorneys in this State." (D.I. 84 at 15–16.) Moreover, in another recent case in this District the Court referred to an affidavit by Mr. Sandler in setting attorneys' fees. *See Amico v. New Castle County*, 654 F.Supp. 982, 1000 (D.Del.1987) (awarding fees to out-of-state attorneys in a civil rights action), *aff'd*, 813 F.2d 396 (3d Cir.1987).

Based upon the oral arguments and the written submissions of the parties—particularly the Sandler affidavit—the Court will compute its fee award using the following hourly rates:

| Attorney | Years Experience [7] | Hourly Rate | | |
|---|---|---|---|---|
| | | Per Sandler Criteria | Requested by Plaintiffs | Awarded by the Court |
| Hankins | 16 | $150 | $200 | $150 |
| Hayes | 12 | 150 | 150 | 150 |
| Sussman | 10 | 125 | 150 | 125 |
| Little | 6 | 100 | 150 | 100 |
| Thompson | 6 | 100 | 150 | 100 |
| Gregory | 11 | 125 | 100 | 100[8] |
| Carter | 19 | 150 | 150 | 150 |

## D. *The Lodestar*

The hours (as computed in part II.B. *supra*) coupled with the rates (determined in part II.C. *supra*) are combined to produce the following lodestar:

| Attorney | Hours Awarded | Rate Awarded | Amount Awarded |
|---|---|---|---|
| In litigating the underlying voting rights claim: | | | |
| Hankins | 3.45 | $150 | $ 517.50 |
| Hayes | 190.98 | 150 | 28,647.00 |
| Sussman | 62.42 | 125 | 7,802.50 |
| Little | 17.15 | 100 | 1,715.00 |
| Thompson | 8.00 | 100 | 800.00 |

6. *See* part II.A. of this opinion, *supra*.

7. Years of experience were calculated by the Court as the number of years elapsed since graduation from law school. The source of this information is as follows: For Messrs. Hankins and Sussman, and Ms. Little, D.I. 79, Ex. F; for Mr. Hayes, D.I. 79, Ex. A; for Mr. Thompson, D.I. 79, Ex. G; for Mr. Gregory, D.I. 79, Ex. H; for Mr. Carter, D.I. 89 at 32.

8. The hourly rate awarded for Mr. Gregory of $100 is less than the $125 which the Sandler affidavit would otherwise suggest. There are two reasons for the $100 rate. First, that is the rate which plaintiffs have requested. Secondly, Mr. Gregory served as local counsel, not as lead counsel, which position would ordinarily command a lower fee.

(. . .continued)

| Attorney | Hours Awarded | Rate Awarded | Amount Awarded |
|---|---|---|---|
| Gregory | 25.00 | 100 | $ 2,500.00 |
| Subtotal | | | $41,982.00 |
| In requesting award for fees and costs: | | | |
| Hayes | 19.50 | 150 | 2,925.00 |
| Carter | 8.00 | 150 | 1,200.00 |
| Subtotal | | | 4,125.00 |
| Total | | | $46,107.00 |

### E. *Enhancement*

██ Plaintiffs ask the Court to exercise its discretion and increase the fee award, without hinting as to the extent by which the award should be increased. (D.I. 79 at ix.) Defendants not only oppose any enhancement, but also suggest that the lodestar be adjusted downward. (D.I. 84 at 19.) The Court will not disturb the lodestar figure.

The lodestar *"is presumed* to be the reasonable fee to which counsel is entitled." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 564, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986) (emphasis in original) (citing *Blum v. Stenson,* 465 U.S. at 897, 104 S.Ct. at 1548). Parties requesting a departure from the lodestar bear the burden of showing why an adjustment is appropriate. *Blum v. Stenson,* 465 U.S. at 898, 104 S.Ct. at 1548; H. Newberg, *Attorney Fee Awards* § 4.04, at 132 n. 32 (1986). In this case, neither party has sustained any such burden.

Decisions of the Supreme Court teach that a fee enhancement is permitted (though not required) in cases of "exceptional success." *See Blum v. Stenson,* 465

U.S. at 901, 104 S.Ct. at 1550; *Hensley v. Eckerhart,* 461 U.S. at 435, 103 S.Ct. at 1940. Plaintiffs are prevailing parties in this action. Without intending to belittle the results achieved by plaintiffs, the Court holds that their success does not rise to the level of "exceptional." No enhancement or reduction of the lodestar will be granted.

### III. COSTS

Plaintiffs request reimbursement for $27,921.52 of expenses incurred in prosecuting their voting rights claims, and an additional $981 of costs[9] in preparing the instant fee application. (D.I. 80 at 3; D.I. 89 at 32–33.) The 34 items comprising plaintiffs' $27,921.52 in expenses are detailed in D.I. 79, Ex. C at 1–3. For purposes of identification, the Court has numbered (sequentially, from 1 to 34) the line items which constitute the $27,921.52. These line items will be referenced accordingly by the Court throughout this opinion.

Although not cited in their briefs, plaintiffs' request for costs is apparently based upon Fed.R.Civ.P. 54(d) and 28 U.S.C. § 1920.[10] Rule 54(d) provides: "Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of

9. The $981 of additional expenses consist of the following items:

| | |
|---|---|
| photocopying | $ 80.00 |
| travel: attorney Hayes | 87.00 |
| travel: witness McDonald | 514.00 |
| hotel: Hayes and McDonald | 300.00 |
| Total | $981.00 |

D.I. 89 at 32–33.

10. Plaintiffs do mention 42 U.S.C. §§ 1973*l* (e) and 1988. (D.I. 79 at 2.) The relevant language in both of those provisions is identical: "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." 42 U.S.C. §§ 1973*l* (e), 1988. These sections authorize recovery of attorneys' fees as one component of awardable costs. Standing alone they do not, however, authorize awards of any other class of costs. That task is left to Fed.R.Civ.P. 54(d). Nor do these sections describe which categories of costs—other than attorneys' fees—are awardable. Section 1920 serves that function.

course to the prevailing party unless the court otherwise directs...." The categories of awardable costs under Rule 54(d) are listed in 28 U.S.C. § 1920. Defendants contest nearly every expense item sought by plaintiffs—on various grounds, including the argument that many of the expense items are not within the scope of § 1920 and therefore cannot properly be awarded. (D.I. 84 at 3, 5, 21–27.) Defendants' assorted objections are addressed in the following sections of this opinion.

## A. Waiver of Costs

■ As a threshold matter, defendants contend that plaintiffs' motion for an award of expenses is untimely. (D.I. 84 at 3, 20–21.) As defendants would have it, the plaintiffs waived their claim for costs, and the motion for costs should therefore be denied in its entirety. Defendants' argument is based upon Local Rule 6.1 A(1), which provides:

> The party in whose favor a judgment or decree for costs is awarded or allowed by law, and who claims his costs, shall within ten (10) days after the time for appeal has expired or within ten (10) days after the issuance of the mandate of the appellate court, serve on the attorney for the adverse party and file with the Clerk of this Court his bill of costs. Failure to comply with the limitations of this Rule shall constitute a waiver of costs, unless the Court otherwise orders or counsel are able to agree on the payment of costs.

D.Del.R. 6.1 A(1).

Defendants assert (and plaintiffs do not dispute) that plaintiffs did not file their request for costs within the ten days contemplated by Local Rule 6.1 A(1). Nevertheless, this Court is not persuaded by defendants' argument.

The time limitations contained in Local Rule 6.1 A(1) refer to: (1) expiration of the time to *appeal*, and (2) issuance of the mandate of the *appellate* court. The parties to the instant action reached an out-of-court settlement, which was followed by the March 18, 1988 Consent Order. (D.I. 74.) Consent orders, by their very nature, are simply not appealed. Hence Local Rule 6.1 A(1), with its references to events in the appellate process, is inapposite in this context and will not be applied.

Moreover, Local Rule 6.1 A(1) by its own terms does not apply where "counsel are able to agree on the payment of costs." The Consent Order clearly indicated that the Court would reserve judgment on the issue of costs.[11] Defendants' counsel signed the Consent Order, thereby approving of its form and content. (*See* D.I. 74 at 6.) Arguably defendants have agreed to the fact that costs are awardable in this action (albeit contesting the *amount* of awardable costs). Hence defendants' argument is meritless. If there was any waiver as to costs, it was a waiver by defendants, not plaintiffs.

It is also noteworthy that the Consent Order provided defendants with notice of plaintiffs' impending application for costs. It cannot be said that defendants changed their position or were prejudiced as the result of any delay by plaintiffs.

Finally, the waiver of costs provision in Local Rule 6.1 A(1) contains the following qualification: "Failure to comply with the time limitations of this Rule shall constitute a waiver of costs, *unless the Court otherwise orders....*" (Emphasis added.) Here the Court concludes that even if plaintiffs waived their claim for costs within the meaning of Local Rule 6.1 A(1), the interest of justice compels it to "order otherwise." Accordingly, plaintiffs are held not to have waived their claim for costs.

Having disposed of defendants' argument that plaintiffs' motion for costs should be denied *in toto*, the Court must now consider defendants' objections to specific expense items sought by plaintiffs.

## B. Inadequate Documentation

■ Defendants challenge line items 1 through 12, 22, and 25 because these ex-

---

11. "The court shall decide the issue of plaintiffs' attorney's fees and costs." (D.I. 74 at 5.) "The court shall retain jurisdiction of this action to determine whether any further remedial action is necessary, and to decide the issue of plaintiffs' attorney's fees and costs." (D.I. 74 at 6.)

penses are undocumented.[12] (D.I. 84 at 24–25.) Failure to properly document expenses is an obvious ground for denial of costs to an applicant.[13] *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (insufficient records concerning hours worked and rates claimed by attorneys justifies a reduction in the fees awarded).

After defendants objected, the plaintiffs produced some documentation in support of line items 1 through 5, 10 through 12, and 25. (D.I. 87, Ex. A.) No proof of items 6 through 9, and 22 was offered. The Court will deny plaintiffs' request for reimbursement of items 6 through 9, and 22. In addition, while acknowledging that plaintiffs submitted some written evidence in support of items 2 and 25, the Court finds this documentation to be wholly inadequate and will therefore deny reimbursement for these items.

In summary, the Court rejects plaintiffs' request for reimbursement of the following items on the basis of insufficient documentation:

| Line Item Number in D.I. 79, Ex. C at 1–3 | Amount of Expense Denied[14] |
|---|---|
| 2 | $ 66.00 |
| 6 | 190.41 |
| 7 | 8.50 |
| 8 | 260.20 |
| 9 | 220.00 |
| 22 | 219.00 |
| 25 | 5.00 |
| Total | $969.11 |

**12.** The items in question are as follows:

| Line Item Number in D.I. 79, Ex. C. at 1–3 | Amount of Expense Requested |
|---|---|
| 1 | $ 103.90 |
| 2 | 66.00 |
| 3 | 143.00 |
| 4 | 289.50 |
| 5 | 120.18 |
| 6 | 190.41 |
| 7 | 8.50 |
| 8 | 260.20 |
| 9 | 220.00 |
| 10 | 430.90 |
| 11 | 139.16 |
| 12 | 224.62 |
| 22 | 219.00 |
| 25 | 5.00 |
| Total | $2,420.37 |

## C. *Double Counting*

Defendants assail certain expense items on the ground that they represent duplicate requests.

First, defendants state that line item 18 —an amount of $2,140.55 billed to the NAACP by expert witness Wilson—is merely the sum of line items 15 to 17, which detail the components of Wilson's total bill. (D.I. 84 at 25.) Secondly, defendants allege that line items 21 and 23— sums of $559.46 and $272.25 respectively paid to expert witness McKay—are already included in line item 24, McKay's total bill of $13,840.63. (D.I. 84 at 25.) Lastly, defendants point out that line item 28—$2,500.00 payable to local counsel Gregory—is already embodied in the request for attorneys' fees.[15] (D.I. 84 at 27.)

Defendants' challenges appear to be well founded. Plaintiffs' reply brief offers no explanation for the apparent double-counting. (*See* D.I. 87.) The Court will therefore strike the following expense items on the ground that they represent duplicate requests:

| Line Item Number in D.I. 79, Ex. C at 1–3 | Amount of Expense Denied |
|---|---|
| 18 | $2,140.55 |
| 21 | 559.46 |
| 23 | 272.25 |
| 28 | 2,500.00 |
| Total | $5,472.26 |

**13.** This Court is not the NAACP's personal accountant, and does not look favorably upon being cast in that role. The "records" submitted by the plaintiffs were disjointed and incomplete. The Court was forced to summarize and catalog expenses by category, which required sifting through documents to determine the nature of various expenditures, and whether those expenditures were supported by even a shred of evidence.

**14.** Line items 2, and 6 through 9 appear to be counsels' travel expenses. Reimbursement for these items would also be denied on the additional ground that such expenditures are not recoverable. *See* part III. F. of this opinion, *infra.*

**15.** *See* part II.A. of this opinion, *supra.*

## D. *Expert Witness Fees*

■ Plaintiffs seek reimbursement for various payments made to expert witnesses.[16] Defendants object, citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987).

In *Crawford Fitting,* the Supreme Court analyzed the relationship among: (1) Fed. R.Civ.P. 54(d), (2) 28 U.S.C. § 1920, and (3) 28 U.S.C. § 1821(b). Rule 54(d) provides that a prevailing party is generally entitled to recover litigation costs from its adversary. Section 1920 lists the classes of recoverable costs, including "[f]ees and disbursements for ... witnesses." 28 U.S.C. § 1920(3).[17] Section 1821(b) states that witnesses shall be paid a $30 per day fee for court attendance. The Supreme Court in *Crawford Fitting* held that federal courts could award as expert witness fees no more than the limited amount prescribed by § 1821(b).[18] *Crawford Fitting,* 107 S.Ct. at 2496, 2499. "[W]hen a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limits of § 1821, absent contract or explicit statutory authority to the contrary." *Id.* at 2496. In the instant case there is no contract or explicit statutory authorization for an award of expert witness fees to plaintiffs. This Court must follow *Crawford Fitting* and will deny plaintiffs' request for expert witness fees.

■ Plaintiffs' briefs neglect to mention *Crawford Fitting,* and make no attempt to rebut defendants' reliance upon that case. The Court is not unmindful of the suggestion by the *Crawford Fitting* dissent that the holding of that case does not extend to civil rights cases. 107 S.Ct. at 2500 n. 1 (Marshall, J., dissenting); 107 S.Ct. at 2499 (Blackmun, J., concurring). Nevertheless, this Court believes that a fair reading of the broad language used by the six-justice majority in *Crawford Fitting* requires that the result there applies with equal force in the civil rights context.[19] As indicated in footnote 10 of this opinion, *supra,* 42 U.S. C. §§ 1988 and 1973*l* (e) contain no independent authorization for awards of costs. Those portions of the civil rights statutes merely authorize awards of attorneys' fees as one component of costs. They in no way supplant Fed.R.Civ.P. 54(d) and 28 U.S.C. § 1920 as the main operative provisions in the area of expense awards. The obvious premise of *Crawford Fitting* is that costs must be specifically listed in § 1920 or in some other statutory provision in order to be recoverable under Rule 54(d).

The Court's reading of *Crawford Fitting* finds support in recent Third Circuit precedent citing that case. *See Dr. Bernard Heller Foundation v. Lee,* 847 F.2d 83, 86 (3d Cir.1988); *Dominic v. Hess Oil V.I. Corp.,* 841 F.2d 513, 517 (3d Cir.1988) ("under the clear mandate of *Crawford [Fitting],* [t]he taxation of expert witness fees as costs may not exceed the $30 per day limit set in 28 U.S.C. § 1821"); *Boring v. Kozakiewicz,* 833 F.2d 468, 474 (3d Cir. 1987) ("prevailing party in a *civil rights case* is not entitled to tax [expert witness] fees as costs" (emphasis added)). *See also Student Public Interest Research Group*

---

**16.** Relevant are the following line items:

| Line Item Number in D.I. 79, Ex. C at 1–3 | Expert Witness | Amount Requested |
| --- | --- | --- |
| 13 | Litchman | $ 900.00 |
| 15 | Wilson | 583.33 |
| 16 | Wilson | 1,099.89 |
| 17 | Wilson | 437.38 |
| 24 | McKay | 13,840.63 |
| Total | | $16,861.23 |

Plaintiffs' designation of their expert witnesses appears in D.I. 57 at 2.

**17.** Section 1920(6), which authorizes awards to the prevailing party for "[c]ompensation of court appointed experts," has no application here in that the Court appointed none of the expert witnesses in this action.

**18.** The parties settled this action before trial. (D.I. 74.) No court attendance by the plaintiffs' experts was necessary. Thus the provision in § 1821(b) of $30 per day in attendance fees is inapposite.

**19.** In fact as defendants correctly point out (D.I. 84 at 24), one of the consolidated cases subsumed within the *Crawford Fitting* opinion was itself a civil rights case.

*of New Jersey, Inc. v. Anchor Thread Co.,* No. 84–320 (D.N.J. May 13, 1988) (1988 WL 49177, *4, DCT database) ("[t]his Court agrees with those courts that have interpreted the Crawford Fitting ruling with respect to expert witness fees, to apply beyond the parameters of Fed.R.Civ.P. 54 (d)").

For the foregoing reasons the Court will deny plaintiffs' request for expert witness fees. This holding reaches expert witness fees—that is, compensation paid to expert witnesses. It does not preclude reimbursement for witnesses' out-of-pocket costs. Line item 17 (for $437.38 to expert witness Wilson) is such a cost and will be allowed. Similarly, only $11,550.00 of the $13,840.63 billing by the expert witness McKay (line item 24) represents her consulting fee. Reimbursement of this amount will be denied. The Court will allow recovery of the remaining $2,290.63 paid to McKay.

To summarize, the Court will deny plaintiffs' application for expert witness fees to the following extent:

| Line Item Number in D.I. 79, Ex. C at 1–3 | Amount of Expense Denied |
| --- | --- |
| 13 | $   900.00 |
| 15 | 583.33 |
| 16 | 1,099.89 |
| 24 | 11,550.00 |
| Total | $14,133.22 |

### E. *Deposition Costs*

■ Defendants attack plaintiffs' request for $2,191.18 [20] in fees paid to court reporters for taking depositions. (D.I. 84 at 22–23.) Defendants cite Local Rule 6.1 B(3) which provides that "[t]he reporter's reasonable charge for the original of a deposition ... [is] taxable only where a substantial portion of the deposition is admitted into evidence at trial or otherwise used in the resolution of a material issue in the case." D.Del.R. 6.1 B(3).[21] *See also Skomorucha v. Wilmington Housing Authority,* 518 F.Supp. 657, 660 (D.Del.1981) (awarding the cost of depositions but emphasizing "counsel's extensive use of depositions at trial"); *Chemical Bank v. Kimmel,* 68 F.R.D. 679, 684–85 (D.Del.1975) (awarding the cost of taking a deposition, but stressing that it was used in preparing for trial and that its purpose went "beyond mere discovery"). According to defendants: "In this case, it seems apparent that the depositions were taken for discovery purposes and not for use at trial. Therefore, under the usual rule in this District, the request for taxation of court reporter's fees should be denied." (D.I. 84 at 22–23.)

Plaintiffs' reply brief ignores defendants' challenge to the requested deposition costs. Defendants' argument is well taken by this Court. As this action settled before trial, "a substantial portion of the depositions" in question certainly were not "admitted into evidence at trial." *See* D.Del.R. 6.1 B(3). Likewise the Court is unable to conclude that the depositions were "otherwise used in the resolution of a material issue in the case." *Id.* Accordingly, the Court will deny plaintiffs' request for reporter's fees for taking depositions, in the amount of $2,191.18.

### F. *Attorneys' Travel Expenses*

■ Defendants also contest plaintiffs' request for reimbursement of their attorneys' travel, lodging and meal expenses. (D.I. 84 at 21–22.) Again plaintiffs' reply brief fails to answer defendants' challenge.

---

**20.** This figure is comprised of the following:

| Line Item Number in D.I. 79, Ex. C at 1–3 | Amount Requested |
| --- | --- |
| 19 | $  873.00 |
| 20 | 222.96 |
| 27 | 400.00 |
| 31 | 695.22 |
| Total | $2,191.18 |

**21.** *Cf.* 28 U.S.C. § 1920(2) (a court may award "[f]ees of the court reporter for all or any part of the stenographic transcript *necessarily obtained* for use in the case" (emphasis added)). The Supreme Court has held that § 1920 sets a ceiling, but not a floor, on a district court's power to tax items as costs. *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 107 S.Ct. 2494, 2498, 96 L.Ed.2d 385 (1987) ("[t]he *discretion* granted [to district courts] by Rule 54(d) ... is *solely* a power *to decline to tax,* as costs, the items enumerated in § 1920" (emphasis added)).

On the issue of attorneys' travel expenses, 28 U.S.C. § 1920 is silent.[22] Meanwhile 42 U.S.C. §§ 1973*l* (e) and 1988, though referring specifically to attorneys' *fees,* make no provision for attorneys' *travel costs.* This Court is convinced that a fair and logical reading of *Crawford Fitting* calls for a denial of attorneys' travel expenses. *See Bee v. Greaves,* 669 F.Supp. 372, 379 (D.Utah 1987) (the court in a civil rights action applied *Crawford Fitting* and eliminated all expenses in plaintiff's application which were not specifically covered by § 1920). *See also Dominic v. Hess Oil V.I. Corp.,* 841 F.2d 513, 517 (3d Cir.1988) ("[t]he [Supreme] Court [in *Crawford Fitting* ] reasoned that 28 U.S.C. § 1920 enumerates [the universe of] expenses that a federal court may tax as a cost under the discretionary authority to tax costs found in Fed.R.Civ.P. 54(d)").

"Even if [district courts after *Crawford Fitting* retain] discretion to go beyond § 1920, courts have historically rejected taxation of the cost of long distance telephone calls, travel expenses and postage." *Bee v. Greaves,* 669 F.Supp. at 379 n. 17 (citing 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2677 at 370–71 (1983)). *See also Gonzales v. Van's Chevrolet, Inc.,* 498 F.Supp. 1102, 1105 (D.Del.1980); *Vecchione v. Wohlgemuth,* 481 F.Supp. 776, 798 (E.D.Pa.1979); *Chemical Bank v. Kimmel,* 68 F.R.D. 679, 685 (D.Del.1975).

Hence the Court will deny plaintiffs' request to recover attorneys' travel expenses, consisting of the following items:

| Line Item Number in D.I. 79, Ex. C at 1–3 | Attorney[23] | Amount of Expense Denied |
|---|---|---|
| 1 | Hankins | $103.90 |
| 3 | Little | 143.00 |
| 4 | Little | 289.50 |
| 5 | Little | 120.18 |
| 10 | Gregg | 430.90 |
| 11 | O'Flaherty | 139.16 |
| 12 | O'Flaherty | 224.62 |
| 30 | Thompson | 84.08 |
| 32 | Hayes | 255.00 |
| 33 | Hayes | 53.00 |
| | Hayes | 237.00[24] |
| Total | | $2,080.34 |

### G. *Unrelated Expenses*

Finally, defendants take issue with an expenditure by plaintiffs which, say defendants, is unrelated to this lawsuit. (D.I. 84 at 25–26.) Defendants challenge line item 29—expenses of expert witness McKay (in the amount of $506.00) in traveling round-trip between Philadelphia and Springfield, Illinois. Defendants state that Dr. McKay lives and works in Delaware, and question whether travel to Illinois can be properly charged to this action. (D.I. 84 at 26.)

Defendants' objection appears on its face to have merit. Once again plaintiffs' reply brief fails to confront defendants' challenge. Accordingly, the Court will deny

22. Distinguish *witnesses'* travel expenses, reimbursement for which the statute explicitly provides. 28 U.S.C. § 1821(b), (c); 28 U.S.C. § 1920(3).

23. Line items 10 through 12 reflect travel expenses incurred by persons named Gregg and O'Flaherty. Although the record does not reveal whether or not Gregg and O'Flaherty are attorneys, the documentation submitted in support of their expenses would indicate that these individuals are agents of the NAACP legal department. The Court will treat their expenses the same as if they were attorneys.

24. The $237.00 item represents attorney Hayes' travel expenses in presenting the fee application. (D.I. 89 at 32–33.) It includes one-half of the $300 in hotel costs, the other half being assigned to witness McDonald. *See id.* at 33.

plaintiffs' requested reimbursement for line item 29, in the amount of $506.00.

### H. *Expense Summary*

The Court has reviewed the expenses not previously denied in the foregoing sections of this opinion. The Court finds these other items to be reasonable and necessary, and will award plaintiffs $3,550.41, calculated as follows:

| | | |
|---|---:|---:|
| Expenses of prosecuting voting rights claim | | $27,921.52 |
| Expenses in applying for fees and costs award | | 981.00 |
| Total expenses requested | | 28,902.52 |
| Less expenses denied by the Court: | | |
| Inadequate documentation | $ 969.11 | |
| Double counting | 5,472.26 | |
| Expert witness fees | 14,133.22 | |
| Deposition costs | 2,191.18 | |
| Attorneys' travel expenses | 2,080.34 | |
| Unrelated expenses | 506.00 | 25,352.11 |
| Total Expenses Awarded | | $ 3,550.41 |

## IV. CONCLUSION

For the reasons stated in the preceding parts of this opinion, the Court will enter an order requiring defendants to pay plaintiffs $46,107.00 in attorneys' fees, and $3,550.41 in costs.