COALITION TO SAVE OUR
CHILDREN, Plaintiff,

v.

STATE BOARD OF EDUCATION OF the STATE OF DELAWARE, the Board of Education of the Brandywine School District, the Board of Education of the Christina School District, the Board of Education of the Colonial School District, and the Board of Education of the Red Clay Consolidated School District, and Delaware House of Representatives Committee on Desegregation, Defendants.

Civ. A. Nos. 56–1816–SLR
to 56–1822–SLR.

United States District Court,
D. Delaware.

Aug. 14, 1995.

Victor F. Battaglia, of Biggs and Battaglia, Wilmington, Delaware; Thomas S. Henderson, Washington, D.C.; Thomas D. Barr, Sandra C. Goldstein, and Thomas G. Rafferty, of Cravath, Swaine & Moore, New York City; Louis R. Lucas, Memphis, Tennessee, for plaintiff.

Alfred J. D'Angelo, Jr., M. Duncan, Grant, and Kathryn A. Kelly, of Pepper, Hamilton & Sheetz, Wilmington, Delaware, for the Red Clay Consolidated School District.

## MEMORANDUM OPINION

SUE L. ROBINSON, District Judge.

## I. INTRODUCTION

Presently before the court are two applications for attorney's fees and costs associated

with plaintiff's opposition to defendant Red Clay Consolidated School District's ("Red Clay") motion for open enrollment (the "Open Enrollment Motion"). (D.I. 1802; 1811) (the "fee applications") The attorneys originally applied for fees without any documentation to support their applications. The court then ordered the parties to submit documentation (D.I.1978) which counsel submitted and the court has now thoroughly reviewed. This is the court's decision as to the merits of counsels' applications.

## II. BACKGROUND [1]

Prior to the hearing on defendants' motion for unitary status, defendant Red Clay moved the court to modify the standing injunction requiring students to attend a minimum of three consecutive years of education in formerly predominately black schools ("city schools"). (D.I. 1701) On August 29, 1995, the court denied Red Clay's motion, holding as follows:

> If one simply reviews the numbers generated in connection with this motion, one can argue (as plaintiff does) that Red Clay's open enrollment proposal is not compatible with the desegregation process.... If Red Clay's open enrollment proposal were being reviewed in the broader context of defining the ultimate goals of this litigation, the statistical snapshot presented at bar would be insufficient in and of itself, to sidetrack the proposal. In the context of the court's past analytical framework, however, sufficient concerns have been raised to preclude approval of Red Clay's motion for open enrollment as it applies to the 1994-95 school year.

(D.I. 1780 at 9) On September 20, 1994, plaintiff's lead counsel, the law firm of Cravath, Swain & Moore ("Cravath") applied for attorney's fees for legal services performed in connection with said motion. (D.I. 1802) On October 11, 1994, plaintiff's additional counsel, Louis Lucas, also applied for attor-

ney's fees in connection with his work on said motion. (D.I. 1811) Red Clay opposes each fee application both as a general matter, and as to specific components thereof. (D.I. 1808, 1822)

## A. Cravath's Application for Attorney's Fees

Cravath seeks fees for three separate activities. First, it seeks fees for the preparation of three briefs and seven declarations. (D.I. 1715; 1721; 1771; 1773) These briefs consist of a total of 63 pages of text. Next it seeks fees for appearances before the court including several teleconferences and one hearing.[2] (D.I. 1713; 1723; 1757; 1770) As previously noted, the August 18, 1994 hearing addressed the Open Enrollment Motion only briefly. (D.I. 1770 at 1–20) Third, Cravath seeks compensation for the document discovery it alleges occurred May 20, May 23—May 25, and August 8, 1994 and for the preparation of two depositions. (D.I. 1801 at 1–5) Cravath also seeks compensation for various expenses including: $7,101.72 for travel expenses, $6,959.47 for disbursements, $34,044.08 for document reproduction, telephone, facsimile, computer research and messenger charges. (*Id.* at 8; 1980)

Red Clay objects to Cravath's application on several grounds. As an initial matter, Red Clay objects to the application philosophically, arguing without citation that Congress did not intend the fee shifting provision of 42 U.S.C. § 1988 to apply to "gross and excessive overlawyering" for a narrow motion such as the one at issue. (D.I. 1808 at 2) Red Clay also objects to the motion as deficient on its face and, based on the documents filed by Cravath, concludes that many of these services must have been performed in connection with the motion for unitary status. Finally, as to the expenses requested by Cravath, Red Clay notes that they are not compensable expenses. (D.I. 1808; 1986)

---

1. The events preceding this decision have previously been summarized by the court in a prior memorandum order dated June 23, 1995. (D.I. 1978) For the sake of completeness, the court recounts the relevant facts here.

2. Originally, Cravath sought fees for three teleconferences. However, after the court questioned the propriety of seeking fees for an entire teleconference in which the court only briefly addressed the Open Enrollment Motion, it appears Cravath has retreated from this position. (D.I. 1978, 1981)

In its initial motion, Cravath did not actually request a specific dollar amount. Rather, it requested compensation for a total of 3,525.4 hours expended by professional and paraprofessional staff. (D.I. 1801) After Red Clay challenged this figure, Cravath decreased its request to 3027.6 hours and withdrew its request to be reimbursed for secretarial expenses. (D.I. 1812 at 3; 1980 at 3) Originally, Cravath delineated the hours requested by partner, associate, summer associate, legal assistant, and secretarial staff. (D.I. 1801, Ex. A) Nowhere in its application had Cravath demonstrated how many hours any individual spent on any given task. Rather, it just listed various tasks and how many total hours staff utilized in connection with the Open Enrollment Motion. (D.I. 1801)

The court, concluding that it could determine neither the reasonableness of the hours spent nor the reasonableness of the fees charged and costs incurred without documentation, ordered Cravath to supplement its application with proof of the hours claimed and costs. (D.I. 1978) In a letter accompanying the documentation, Cravath states, *inter alia*, the following:

> We neither requested nor expected the Court to award a figure equal to the total amount we expended in our representation of the Coalition.
>
> \* \* \* \* \* \*
>
> Had Cravath hoped or expected that its representation of the Coalition would "pay for itself[,]"[ ] we would have submitted to this Court an attorney's fees application for the full amount of hours worked by Cravath attorneys at our standard billing rates. Instead, and in the spirit of our pro bono undertaking, although Cravath attorneys spent the majority of their approximately 6,700 hours of work related to the Coalition matters through August 30, 1994 working on Red Clay's Open Enrollment motion, we submitted to the Court the considerably more conservative figure of 3027.6 hours, or approximately 45% of the total attorney and paralegal hours spent

representing the Coalition, at half our standard billing rates, for a total of $249,-488.75. (D.I. 1812 at 2). Our standard billing rates would require that the true fees at issue amount to about one-half million dollars.

(D.I. 1979 at 2) While the court appreciates Cravath's self-professed intent to limit its attorney's fees and cost application, the documents submitted to support said request fail to do so.

**B. Lucas' Application for Attorney's Fees**

Lucas's fee application is quite similar to that of Cravath in that it originally provided no documentation for his claims. (D.I. 1811) Lucas originally asserted that he spent a total of 56.1[3] hours, among other things, assisting in drafting briefs and conducting discovery on May 20, 1994. (*Id.*) In response to the aforementioned court order (D.I. 1978), Lucas submitted additional documents supporting his request for fees and costs. Interestingly, although Lucas originally claimed his main tasks were the preparation of briefs and document review, when required to document his hours to reach a total of 56.2 hours, nearly half of them are for other tasks. (D.I. 1983) He asserts that his billing rate is $300.00 per hour and requests, therefore, $16,830.00 in attorney's fees. As to expenses, Lucas originally requested a total of $2,669.98 for travel, lodging, copy, postage and telephone charges. (*Id.*) In his court-ordered documentation, he decreases his request for expenses from $2,699.98 to $1,591.54 due to a mathematical error. (*Id.* at ¶ 4)

Red Clay objects to Lucas' request on the same grounds as it did for Cravath's request: i.e., that the fee application is deficient, that in connection with Cravath's fee application the hours expended are excessive, and that the expenses requested are not reimbursable. (D.I. 1825) Red Clay also objects to Lucas' proposed hourly rate as excessive. (*Id.*)

---

**3.** Originally Lucas claimed 56.1 hours, but in his documentation he now claims 56.2 hours. (D.I. 1811; 1983)

## III. DISCUSSION

### A. Applicable Standard

 The Congress of the United States has authorized district courts to award a prevailing party who enforces certain civil rights statutes "reasonable attorney's fee[s]." 42 U.S.C. § 1988. A plaintiff is a "prevailing party" if it "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1938, 76 L.Ed.2d 40 (1983). Having defeated Red Clay's attempt to exempt itself from the 9–3 requirement, the court regards plaintiff as the prevailing party on a significant, albeit narrow, issue in this litigation.

 The process to determine the appropriate attorney's fees is well settled. The court calculates the appropriate lodestar by multiplying the number of hours reasonably spent on the case by a reasonable hourly rate of compensation for each attorney. *Id.*

The party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable. To meet its burden, the fee petitioner must "submit evidence supporting the hours worked and rates claimed." *Hensley v. Eckerhart,* 461 U.S. 424, 433 [103 S.Ct. 1933, 1939, 76 L.Ed.2d 40] (1983). In a statutory fee case, the party opposing the fee award then has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee. *Bell v. United Princeton Properties, Inc.,* 884 F.2d 713 (3d Cir.1989).

*Rode v. Dellarciprete,* 892 F.2d 1177, 1182–1183 (3d Cir.1990); *Central Delaware Branch of NAACP v. Dover,* 123 F.R.D. 85, 88 (D.Del.1988).

 As noted, this court is compelled to determine the reasonableness of all requests.

A predicate to performing this analysis into reasonableness is the court's ascertainment of whether the hours claimed are adequately documented.... Where the documentation is inadequate, the district court may reduce the award accordingly.

*Amico v. New Castle Cty.,* 654 F.Supp. 982, 997, n. 16 (D.Del.1987); *Daggett v. Kimmelman,* 811 F.2d 793, 797 (3d Cir.1987). District courts are required to "set forth the specific reasons underlying the award—what the Supreme Court has described as the need to provide a concise but clear explanation of its reasons for the fee award." *Amico,* 654 F.Supp. at 997.

 The court may only award attorney's fees for hours spent on successful claims. It is the burden of the counsel seeking fees to adequately document hours claimed. *E.g., Keenan v. Philadelphia,* 983 F.2d 459, 473 (3d Cir.1992); *Rode,* 892 F.2d at 1182; *Amico,* 654 F.Supp. at 997. Hours spent on unsuccessful claims should be excluded. *Hensley,* 461 U.S. at 440, 103 S.Ct. at 1943. It is also the moving counsel's burden to establish the reasonable necessity for hours claimed. *Id.* at 443–444, 103 S.Ct. at 1944–45 ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly.") Thus, the court's analysis with respect to the application is essentially three-pronged. First the court must determine whether documentation adequately reflects the hours claimed by the attorneys.[4] If so, the court next determines whether such an expenditure of time is reasonable. Finally, the court determines a reasonable hourly fee for said hours. *E.g., Amico,* 654 F.Supp. at 997.

---

4. In conducting this analysis, the court read counsels' documentation liberally. An entry did not have to explicitly state the words "Open Enrollment Motion" to be credited. However, it did have to have **some indication** of a relationship to said motion, such as the name of an attorney for Red Clay, the word "Choice," "Open Enrollment," "Red Clay Motion," etc. Additionally, on many entries the attorney or employee often included several activities, some of which indicated a relation to the Open Enrollment Mo-

tion and some of which failed to do so. In such an instance that court gave proportional credit to the activities indicated as associated with the motion at issue. For example, on August 3, 1994, Cravath seeks compensation for 13 hours of attorney Goldstein's activity. Yet, only one of these activities indicates a relationship to the Open Enrollment Motion, the letter to Red Clay's attorneys. Therefore, the court gave Goldstein credit for 6.5 hours. (D.I. 1981, Ex. A, Tab 2)

## B. Cravath's Application for Attorney's Fees and Costs

### 1. Fees

■ The court has reviewed the time sheets submitted by Cravath and finds that they do not support Cravath's claim of 3027.6 hours devoted to the Open Enrollment Motion.[5] With respect to time spent by partners, Cravath seeks compensation for 467.5 hours. A review of the time sheets indicates that only 341.5 of these hours have any indication that they are in any way connected to the Open Enrollment Motion. The court notes that Cravath seeks compensation for attendance at the August 18, 1994 hearing. Because only a small portion of that hearing addressed the Open Enrollment Motion, only a portion of that request will be granted. Similarly, Cravath seeks compensation for partner work done on August 31, 1994, two days after the issuance of the court's initial order, and such a request shall not be granted.

Concerning associate, summer associate[6], and foreign associate hours, Cravath seeks compensation for 1,494.8[7] hours. (D.I. 1801 at 6) A diligent review of the documentation reveals that only 895.1 hours reflect any connection to the Open Enrollment Motion. Similarly, of the 953.8 hours of paraprofessional time for which Cravath seeks compensation, only 565.1 hours reflect a similar connection to the Open Enrollment Motion.

Therefore, of the over 3,000 hours claimed by Cravath, only 1,236.6 attorney hours and 565.1 paraprofessional hours will be reviewed by the court for reasonableness. The remainder, due to inadequate documentation, shall be disregarded.

The court now turns to address the reasonableness of the expenditure of the documented hours in the supporting documentation. The first main category of work for which Cravath seeks compensation is its work in connection with hearings and teleconferences. As noted, the August 18, 1994 hearing addressed the issue of the Open Enrollment Motion in a limited fashion. Therefore, of the 28.5 hours Cravath documented as "preparation" for this hearing (8 partner hours and 20.5 associate hours) the court finds this unreasonable and shall grant an award proportionate to the segment of the hearing devoted to this motion: 1 partner hour and 3 associate hours. Attendance time will also be reduced to reflect the proportion of the hearing attributed to the Open Enrollment Motion and the unnecessary attendance of summer associates. Cravath's documented request for 14.5 hours (6 partner hours and 8.5 associate hours) will be decreased to 1 partner hour and .5 associate hours. The seven partner hours for Wilmington meetings on May 18, and 19, 1994 are reasonable and shall be allowed. In preparation for the August 2, 1994 teleconference Cravath documented 5 associate hours. Half that, or 2.5 hours is adequate for such a short conference. Cravath's documentation of 2 partner hours and 3.5 associate hours for participation in the teleconference will be decreased to reflect the full participation of one partner and one associate which would have been reasonable for such a conference (2 partner hours and 2 associate hours).

---

5. The reasons for this conclusion are several and those concerning documentation will be fully explained herein. Anecdotally, however, the court notes the following as illustrative of some of Cravath's entries. On numerous occasions Cravath sought attorney's fees for activity on August 31, 1994. The court issued its order deciding the motion on August 29, 1994, and an additional order was issued on August 30, 1994. (D.I. 1978) Cravath also represented to the court that it could have, but did not, apply for fees for the preparation of the attorney's fees application. However, on August 30, 1994 Cravath seeks compensation for "timing of attorney's fees application." (D.I. 1981, Ex. A, Tab 2) Finally, some of the hours billed appear extraordinary. For example, from August 22, 1994—August 24, 1994, attorney Goldstein billed sixty-two hours on solely open enrollment matters. (*Id.*) Also, on August 17, 1994, paraprofessional Teklu's entries totalled 24.2 hours. (*Id.*, Ex. B, Tab 6)

6. Cravath seeks to treat summer associates as though they were associates. The court questions this and has, at various intervals, decreased the summer associate hours due to the fact that summer associates take longer than associates to perform tasks, or disregarded them altogether when their participation was unnecessary (e.g., attendance at hearings).

7. The total number of hours submitted in documentation appears to be 1,606.3 hours. (D.I. 1981)

The second main area of activity involves depositions. Plaintiff submitted two depositions in connection with this matter, that of Paul Fine and Dr. Gail Ames. In preparation, Cravath documented 222.4 hours (27.5 partner hours, 109.8 associate hours, and 91.9 paraprofessional hours).[8] This is excessive. The court will award 62 hours (14 partner hours, 24 associate hours, and 24 paraprofessional hours) as reasonable to prepare two depositions. For the actual taking of the deposition, the court finds the full documentation of partner hours (8 hours) and associate hours (8 hours) reasonable, and excludes that of summer associates (10.5). The 18.9 associate hours documented for reading the depositions is excessive and the court finds 10 hours (more than a full working day to review two depositions) more reasonable. Additionally, concerning preparation of affidavits (the court assumes this also includes the seven declarations prepared in this matter), Cravath documented 32.5 partner hours and 26 associate hours. For each declaration, the court concludes that 3 partner hours and 2 associate hours is reasonable and, therefore, awards 21 partner hours and 14 associate hours.

The third major activity for which Cravath seeks compensation is the creating of briefs in opposition to the Open Enrollment Motion. A total of 63 pages of text was included in the briefs submitted to the court. (D.I. 1715, 1721, 1771) Cravath claims to have expended 602.2 total hours in preparation of them. This allocation of nearly ten hours per page is unreasonable. A review of the briefs indicates that they address a narrow issue and that the relevant body of law is limited to prior decisions by the court in this litigation and the seminal United States Supreme Court jurisprudence concerning the issue of reviewing school desegregation orders. Therefore, extensive research and voluminous briefing was not necessary to even exceptionally argue plaintiff's position.

Cravath has documented 347.55 hours in the mere drafting (which excludes editing, researching etc.) of said briefs. The court

shall grant the 55.5 partner hours requested as adequate to draft 63 pages of text. The additional 292.05 hours documented by associates shall be excluded as excessive. Cravath has documented for compensation 70.6 associate hours for checking approximately 24 citations and editing 63 pages of text. This is both excessive and disingenuous, given the advent of computerized citation checking. The court will award 20 associate hours for these tasks. The 8 associate hours documented for appendix preparation is reasonable.

Cravath documents 71.55 hours devoted to legal research. Given the extremely limited body of law at issue and the limited number of cases cited in all plaintiff's briefing, the court finds this excessive. Half of this time is reasonable and the court will award 36 hours of associate time. Similarly, Cravath has documented 104.5 hours of paraprofessional time for "assisting in briefing" and "casepulls." This is excessive and 50 hours of paraprofessional assistance is more than reasonable.

Cravath's documentation of 93 partner hours and 63.5 associate hours for discovery requests is excessive, and the court believes that half that, 47 hours, is more reasonable. The court will deduct the summer associate hours (62.5) and award the remaining one associate hour. The 5 associate hours documented for review of Red Clay's discovery requests is reasonable and should be allowed.

The area of document review is one in which the parties strongly disagree. Cravath seeks compensation for documents reviewed May 20, 23–25, 1994. Red Clay argues that the only documents relevant to the Open Enrollment Motion were made available to Cravath after May 26, 1994, and that any document review at Red Clay before then, was with respect to the unitary status motion. It is clear from the record that on May 20 and 23–25, Cravath occupied space at Red Clay's administrative offices and reviewed documents. (D.I. 1822 at 9, n. 6) It is

---

8. This figure includes 91.9 hours for paraprofessional staff. This represents half of the time documented by the paraprofessional staff on "depositions." Since the documentation indicates

several other depositions were prepared for, the court generously allotted half of this time to the Ames and Fine depositions.

also clear that, while Cravath may have been looking for a variety of documents, this document discovery was not solely for the Open Enrollment Motion. (D.I. 1812 at 7, n. 2) And, indeed, Cravath does not specifically argue that the May document review was intended to be in response to the Open Enrollment Motion. Rather, it states that "[d]ocuments retrieved during this discovery session were relevant to all pending motions and were referred to in Plaintiff's Supplemental Memorandum. . . ." (D.I. 1812 at 7) Stating that documents removed from Red Clay were later used in a filing to the court does not justify the implication that the entire document review was for the Open Enrollment Motion. Nor does it justify seeking compensation for the documented hours of 117.5 associate hours and 89.4 paraprofessional hours.[9]

Cravath has documented 27 partner hours and 84.9 associate hours for other document review. This partner request is reasonable. However, 73.4 of the associate hours were performed by summer associates. As such, these hours will be cut in half and the court will grant credit for 48.2 associate hours.

The 7 partner hours devoted to the court's order and response thereto is reasonable. The 10 partner hours in travel is also reasonable. However, the court will exclude travel hours for summer associates (2 hours) and only grant credit for 9.5 associate travel hours because more is excessive. Finally, there remains documentation for several other tasks too numerous to list individually. The documentation for 38.8 paraprofessional hours for photocopying is unreasonable. The court believes that all the documents in connection with the Open Enrollment Motion could be copied in two working days, thus 20 hours is reasonable. The other miscellaneous tasks total 58 partner hours, 77.3 associate hours and 41.6 paraprofessional hours. Because 49.5 of the associate hours are for summer associates, the court will cut this time in half. Otherwise the documentation is reasonable and the court will consider the total of 151.6 hours (58 partner hours, 52

associate hours and 41.6 paraprofessional hours).

■ In summation, 637.35 hours have been credited by the court as having been reasonably expended (258.5 partner hours, 243.7 associate hours, and 135.6 paraprofessional hours). Now the analysis of the court turns to a reasonable hourly rate.

■ In determining the reasonable rate with which an attorney should be compensated, the court looks to the "prevailing rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984); *Rode*, 892 F.2d at 1182. "Prevailing in the relevant community" means rates which are "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Missouri v. Jenkins*, 491 U.S. 274, 286, 109 S.Ct. 2463, 2470, 105 L.Ed.2d 229 (1989) (*quoting Blum*, 465 U.S. at 896 n. 11, 104 S.Ct. at 1547 n. 11). The burden of establishing the reasonableness of a lodestar figure is on the moving party. *N.A.A.C.P.*, 123 F.R.D. at 90.

Cravath, however, has submitted no evidence on the prevailing rates in the community. Rather, it has simply stated "[p]laintiff has merely listed the hours worked and the fees incurred, and asked the court to determine a reasonable award. . . . The firm never intended to charge its normal fees for the legal work performed, and does not now expect to be awarded that amount by the Court." (D.I. 1812 at 1) The lodestar figure Cravath suggested as a guide is $249,488.75, which figure is not broken down mathematically to reflect the number of hours and the hourly rate. (*Id.* at 2)

■ Although the court is left without guidance from Cravath as to "prevailing rates in the relevant community," i.e., Wilmington Delaware, the court takes judicial notice that Lucas has provided some documentation to support a claim of $300.00 per

---

9. Having decided as such, the 198.9 hours documented by the paraprofessional staff for indexing, auditing, creating logs, and searching for missing documents shall not be credited. Additionally the 12 associate hours for travel for the May 20, 23–25 document review is also disallowed.

hour. At a minimum, the court recognizes its current recommended hourly rate for attorneys appointed pursuant to the Criminal Justice Act is $40 for work performed out of court and $60 for that performed in court. Therefore, the court finds that an award of $300 per hour is reasonable for partners, and $60 per hour for associates. The record is devoid of any suggestion of the proper hourly rate for paraprofessional staff, so the court will use $40 per hour. As a result, the court shall award to Cravath $97,596.00 in fees.[10]

### 2. Costs

■ With respect to expenses the "[c]ourt looks to whether the expenses are reasonable, necessary to the prosecution of the litigation, and adequately documented." *Steiner v. Hercules, Inc.*, 835 F.Supp. 771, 792 (D.Del.1993). A court is free to deny a petition for costs either when the court finds no documentation, or said documentation is insufficient. *NAACP*, 123 F.R.D. at 93. The burden is on the moving attorneys to prove entitlement to reimbursement. *West Virginia University Hospitals, Inc. v. Casey*, 898 F.2d 357, 363 (3d Cir.1990).

Cravath asserts that it "incurred disbursements[11] in excess of $10,500 through August 1994 on work related to Coalition matters." (D.I. 1980 at 4) However, it reduces that figure to $6,959.47 to represent its view that two-thirds of the disbursements concerned the Open Enrollment Motion. Cravath offers no basis for this determination. Neither did Cravath explain how it reached this figure in its initial application. ("Cravath incurred disbursements of $6,959.47 in connection with its representation of the Coalition to Save Our Children.") (D.I. 1801 at 7) The same is true for the $34,044.08 sought by Cravath for other costs. Cravath, when ordered by the court to document its claim, announced that it determined that figure by allocating two-thirds of its actual costs of $51,066.13 to the Open Enrollment Motion.

■ Because adequate documentation of expenditures is **required** by the law; and because expenditures may only be reimbursed for activity solely related to the Motion for Open Enrollment, this method of allotting expenses by merely providing documentation of expenses generally and then asking for two-thirds of the total to be reimbursed is unacceptable. As a result, the court has reviewed the documentation item for item and has determined what follows to be a fair reimbursement for legitimate expenses which can in some way be retraced to the Motion for Open Enrollment.[12]

■ Cravath requests reimbursement for the transcript costs of two teleconferences and the August 18, 1994 hearing. These items are adequately documented. However, Del.L.R. 54.1(b)(2) clearly states that transcripts of matters prior to trial are taxable only "when requested by the court, or prepared pursuant to stipulation.... Copies of transcripts for counsel's use are not taxable." No evidence of record exists as to a stipulation between the parties, and the court did not order said transcript. Therefore, the costs for these transcripts cannot be shifted to Red Clay.

■ The transcribing costs of the depositions of Gail Ames and Paul Fine are adequately documented and shall be awarded. Although Del.L.R. 54.1(b)(3) only allows reimbursement of the stenographer's original transcript, the court takes judicial notice that the stenographic company which produced said transcripts produces automatically one original and one copy. Therefore, the cost of both can be shifted to Red Clay, excepting the costs for disks and exhibits, totalling $1,701.73. The $172.71 documented for the rental car for an outside consultant providing aid on a *pro bono* basis is not listed as a taxable costs under 28 U.S.C. § 1920 and, therefore, cannot be shifted to Red Clay.

---

**10.** (258.5 × $300) + (243.7 × $60) + (135.6 × $40) = $97,596.00.

**11.** Cravath defines disbursement to include costs for outside copying services, courier services, court reporter services, local transportation, of-

fice supplies, postage and car rental services for *pro bono* consultant. (D.I. 1980 at 4)

**12.** The court "is not [Cravath's] personal accountant and does not look favorably upon being cast in that role." *N.A.A.C.P.*, 123 F.R.D. at 93 n. 13.

■ The remainder of the requests are rejected for many reasons. The documentation allegedly supporting the requests for copy service, courier charges, vendor receipts, local taxi service, office supplies, postage and miscellaneous costs, document reproduction, telephone, facsimile, research and messenger charges provide absolutely no indication that they are connected to the Open Enrollment Motion. Most troubling is that Cravath provided the court with a request for services rendered as early as April 19, 1994 (one full month before the **filing** of the Motion For Open Enrollment) and as late as September 8, 1994. (D.I. 1981, Ex. C, D) Therefore, the court shall deny costs for all the above mentioned expenses.[13]

■ Finally, Cravath requests reimbursement of $7,101.72 for travel expenses. As a threshold matter, the court will deny any requests concerning document review on May 20–25 because, as mentioned, this review was not solely for the Open Enrollment Motion. Remaining, however, are travel costs for the period of August 8–22, 1994. Red Clay objects to reimbursement of these costs because it does not believe it should be penalized for plaintiff's choice of out-of-town counsel. *Student Public Interest Research Group v. Monsanto Co.*, 721 F.Supp. 604, 613–14 (D.N.J.1989) (citing *Danny Kresky Enterprises Corp. v. Magid*, 716 F.2d 215 (3d. Cir.1983)). The court finds Red Clay's citation to *Monsanto* compelling. Like the plaintiffs in that case, here, the Coalition to Save Our Children has not established that it could not retain local counsel, as all the defendants have done, to litigate its case. To the contrary, it did obtain a Wilmington law firm to act as local counsel in this litigation. The *Monsanto* court noted that, while a party does have the right to retain its counsel of choice, if a party elects to have representation from outside the state when adequate

representation could have been retained locally, said party cannot shift that additional cost to its opposing party. *Id.* As in *Monsanto*, the court recognizes that plaintiffs could have chosen a local counsel who was both within this jurisdiction, but over two hours away. Therefore, the court has granted compensation for adequately documented travel time for counsel from New York because there are parts of Delaware that are equally as distant as New York in travel time. However, the court will not order Red Clay to pay for the travel **expenses** (train fare, hotel, etc.,) which would not otherwise have been incurred if counsel had been from this jurisdiction. *See id.* at 614. Therefore, no compensation for travel costs shall be awarded.

The total amount of costs incurred by Cravath which the court will order Red Clay to pay is $1,701.73.

## C. Lucas' Application For Fees and Costs

### 1. Fees

■ The court shall conduct the same three-pronged analysis of Lucas' fee request and documentation that it did for Cravath. Lucas requests compensation for 56.2 hours of work in which he participated in the following activities: document discovery, preparation and filing of two briefs, numerous conferences and review of correspondence. Red Clay objects to his "abstract" from his continuous time sheet as inadequate documentation. Given its detailed nature, the court finds, as it has in the past, this type of reconstruction sufficient to document the requested hours. *Amico*, 654 F.Supp. at 999.

■ Of the hours documented, the following will be disallowed by the court because the documentation either does not reflect a connection to the Open Enrollment Motion or

---

13. Were the court to look further into these expenses, such would be no guarantee to Cravath that these costs would be awarded. The following anecdotal examples of problems with these expenditures indicate some typical errors in the requests:

 —Cravath sent by overnight mail, on more than one occasion, packages to itself. (*Id.*, Ex. C, Tab 5)

 —Cravath seeks taxicab service reimbursement from as early as April 19, 1994, a full month before the motion at issue was even filed. (*Id.*, Tab 6)

 —Cravath seeks reimbursement for "office supplies" purchased as early as May 1, 1994 and postal charges as early as April 21, 1994. (*Id.*, Tab 8)

the activity's relationship to the Motion is too tangential to deserve credit: May 20th (11 hours), May 23 (.75 hours), May 26 (.5 hours), June 4 (.25 hours), July 12 (1.5 hours), July 14 (3.25 hours), August 11 (1.5), and August 30 (2.75 hours). A total of 34.7 hours remains for the reasonableness determination. The court finds these expenditures of time reasonable.

Lucas requests compensation at the rate of $300 per hour. It is his burden to establish the reasonableness of this amount. He has met this burden by supplying the court with an affidavit from lead counsel for the defendant School Board which states that such a fee is reasonable. (D.I. 1983) Therefore, Lucas shall receive $10,410.00.[14]

### 2. Costs

Lucas originally totalled his costs as $2,669.98, but has since noted a mathematical error and now requests $1,591.54. (D.I. 1983 at 2) The court shall reject the request in its entirety.

 Lucas's request falls into two categories. He first seeks compensation for his trip to Wilmington on May 17 and return on May 20, 1994. It is apparent from the ticket that Lucas purchased the ticket on April 25, 1994, well before the filing of the Open Enrollment Motion. Clear to the court is the fact that Lucas travelled to Wilmington to attend the May 18, 1994 hearing. This hearing had nothing to do with the Open Enrollment Motion which was filed later that day. Moreover, Lucas stated that he did not even know when said motion would be filed. (D.I. 1811 at 49) The second segment of his application for costs is for copying, phone, postage and facsimile. He has not provided documentation which supports his claim that these costs were incurred with respect to the Open Enrollment Motion. As with Cravath, Lucas has failed to adequately document his request and he shall not be granted reimbursement for said costs.

14. (34.7 × $300) = $10,410.00.

15. The court "remind[s] counsel that members of the bar are officers of the court and that they

### IV. CONCLUSION

 Cravath stated at the outset that it "does not expect to be paid its normal fees for this work, but rather asks the Court to determine a reasonable award." (D.I. 1801 at 5) There is no room in a "reasonable" award for overlawyering and inflated billing.[15] For 63 pages of briefing, two teleconferences, and limited document review and discovery, the court has allowed counsel a more than reasonable award.

should demonstrate the same level of billing judgment and sensitivity to fee shifting situations as they do with their own private clients." *Casey*, 898 F.2d at 364.