23CA1135 Nakauchi v Desbien 08-29-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA1135 Jefferson County District Court No. 16CV30654 Honorable Diego G. Hunt, Judge Laurie Nakauchi, Plaintiff-Appellant, v. Larry Desbien, in his official capacity as State Director of Colorado Child Support Services, and Michelle Barnes, in her official capacity as Executive Director of the Colorado Department of Human Services, Defendants-Appellees. ORDER REVERSED AND CASE REMANDED WITH DIRECTIONS Division I Opinion by JUDGE WELLING Martinez* and Taubman*, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced August 29, 2024 Dynamic Policy Law, LLC, Matthew J. Morrissey, Arvada, Colorado, for Plaintiff-Appellant Philip J. Weiser, Attorney General, Allison R. Ailer, Senior Assistant Attorney General, Denver, Colorado, for Defendants-Appellees *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024. 
1 ¶ 1 Plaintiff, Laurie Nakauchi, appeals the trial court’s order awarding her attorney fees and costs. We reverse the trial court’s order and remand the case for further proceedings consistent with this opinion. I. Background A. Factual and Procedural Background ¶ 2 In February 2016, employees of Jefferson County Child Support Services (the county employees) garnished Nakauchi’s wages from her paycheck without notice or the opportunity to present evidence that she had already made her child support payment directly to the other parent. When she challenged this action, the county employees stated that they were following a policy set by the State of Colorado’s Division of Child Support Services, which allowed for the garnishment of wages without notice. ¶ 3 In April 2016, Nakauchi filed a civil rights action pursuant to 42 U.S.C. § 1983 against Jefferson County and a Jefferson County employee in her official capacity (the county defendants) and the State of Colorado, Larry Desbien, in his official capacity as State Director of Colorado Child Support Services, and Michelle Barnes, 
2 in her official capacity as Executive Director of the Colorado Department of Human Services (the state defendants) (collectively, the defendants), alleging a violation of her civil and due process rights. ¶ 4 In September 2016, the defendants filed a joint motion to dismiss pursuant to C.R.C.P. 12(b)(5). In June 2017, the trial court granted the defendants’ joint motion to dismiss. Nakauchi appealed, and a division of this court reversed, concluding that Nakauchi’s complaint stated plausible claims for relief under the Due Process Clauses of the Fifth and Fourteenth Amendments. Nakauchi v. Tafoya, (Colo. App. No. 17CA1089, Apr. 12, 2018) (not published pursuant to C.A.R. 35(e)). ¶ 5 On remand, the case proceeded to trial and Nakauchi sought an injunction against the defendants mandating that all child support obligors in the state be provided with notice and an opportunity to be heard before wages could be garnished for child support. The joint trial management order was filed on June 11, 2019. ¶ 6 The court held a three-day bench trial in July 2019. The trial court didn’t issue its final judgment until December 13, 2020. In 
3 its thirty-five-page final judgment, the trial court concluded that the defendants had deprived Nakauchi of her due process rights when the county employees garnished her wages without notice, but only the state defendants were liable because the county employees were complying with state policies when they garnished Nakauchi’s wages. The trial court issued a statewide injunction against the state defendants and all local child support service units under their management, enjoining them from initiating wage withholdings via an income withholding order (IWO) in direct pay cases
1 without first providing concurrent notice and complying with federal regulations.
2 ¶ 7 Nakauchi appealed the final judgment, asserting that the concurrent notice requirement imposed by the trial court was inadequate because due process required advance notice and an 1 In a direct pay case, the court has determined that the parents can independently manage their child support obligations, so the court doesn’t activate an income assignment because the parents have entered into an “alternative agreement” in which the obligor pays the obligee directly — i.e., without going through the Family Support Registry. See Nakauchi v. Cowart, 2022 COA 77, ¶ 14 (citing § 14-14-111.5(3)(a)(II)(B), C.R.S. 2024). 2 Although the court issued a statewide injunction, this case wasn’t filed or pursued as a class action. 
4 opportunity to be heard before any deprivation of wages could take place. Nakauchi v. Cowart, 2022 COA 77, ¶ 2. The state defendants cross-appealed, arguing that their original no-notice policy was constitutional and the trial court’s injunction was thus unwarranted. Id. at ¶ 3. ¶ 8 In a fifty-one-page opinion, a division of this court agreed with Nakauchi, concluding that due process required advance notice and an opportunity to challenge an IWO before any wages could be garnished for child support obligations. Id. at ¶ 54. The division also concluded that the county’s no-notice policy didn’t comport with due process and the injunction needed to be modified to require some type of predeprivation notice, but it affirmed that the county defendants weren’t liable to Nakauchi. Id. at ¶¶ 65-67, 76. Accordingly, the division reversed the final judgment in part and remanded the case to the trial court to modify the injunction to mandate that a child support obligor must receive advance notice and an opportunity to challenge an IWO before any wage garnishment could take place. Id. at ¶¶ 78-79. 
5 B. The Attorney Fees and Costs Proceeding ¶ 9 As the prevailing party in a civil rights action, Nakauchi sought an award of her attorney fees and costs pursuant to 42 U.S.C. § 1988. Nakauchi filed an initial request for attorney fees and costs on December 23, 2020, and a supplemental request for attorney fees and costs on September 23, 2022. ¶ 10 In her December 23, 2020, request, Nakauchi sought reimbursement for (1) 484.3 hours of her lead counsel’s time billed at an hourly rate of $250; (2) 24.9 hours for her co-counsel’s time billed at an hourly rate of $375 per hour; and (3) $2,088.27 in costs. In total, Nakauchi sought $130,412.50 in attorney fees and $2,088.27 in costs in her first request. ¶ 11 In her September 23, 2022, supplemental request for attorney fees and costs, Nakauchi sought reimbursement for (1) an additional 115.7 hours of her lead counsel’s time billed at an hourly rate of $250; (2) 18.5 hours of paralegal time billed at an hourly rate of $100; and (3) $870.25 for additional costs. In total, in her second request, Nakauchi sought an additional $28,925 in attorney fees, $1,850 in paralegal fees, and $870.25 in costs. This brought Nakauchi’s requested total for the six years her lead counsel 
6 litigated this case to $161,187.50 in attorney fees and $2,958.72 in costs. ¶ 12 In sworn affidavits attached to both requests for attorney fees and costs, Nakauchi’s lead counsel stated that he based his requested hourly rate of $250 on the Colorado Bar Association’s 2017 Economic Survey Snapshot (2017 Survey Snapshot), which reflected that the median hourly billing rate for a private solo practitioner in the state was $250 per hour. Additionally, in his sworn affidavit attached to the September 23, 2022, request for attorney fees and costs, Nakauchi’s lead counsel stated that he based the requested $100 hourly rate for paralegal time based on the 2017 Survey Snapshot, which reflected an hourly rate of $100 for a paralegal with one to two years of experience. In his sworn affidavit attached to the December 23, 2020, request for attorney fees and costs, Nakauchi’s co-counsel stated that his requested rate of $375 per hour was the rate he customarily billed his clients and was the reasonable market rate for an attorney of his skill and experience. ¶ 13 The trial court held an evidentiary hearing on January 6, 2023. Nakauchi’s lead counsel was the only witness who testified. 
7 After considering the evidence and the court file in this case, the trial court ruled that Nakauchi was entitled to an award of attorney fees and costs against the state defendants but couldn’t recover against the county defendants or for her failed state law claim. The trial court also found that Nakauchi couldn’t recover any fees sought for her co-counsel’s time because co-counsel “was not reasonably necessary to the case.” Furthermore, the trial court found that Nakauchi’s lead counsel’s requested hourly rate of $250 per hour was “unreasonable given his level of experience.” While the state defendants argued that Nakauchi’s attorney should only be able to recover at a rate of $150 an hour, the trial court found a rate of $200 an hour to be reasonable. The trial court further found that the 600 hours for which Nakauchi had sought reimbursement for her lead counsel’s time were “excessive and unnecessary.” As a result, the trial court concluded that “a reasonable amount of time for prosecuting Nakauchi’s claim through the two-and-a-half day court trial was 130 hours and 25 hours for each appeal.” The trial court made no findings or conclusions regarding Nakauchi’s request for paralegal time and denied that request without explanation. 
8 ¶ 14 After calculating the lodestar amount, substantially reducing the number of hours Nakauchi’s lead counsel had spent on this litigation, and reducing the hours by another ten percent to account for lead counsel’s time spent on Nakauchi’s failed state law claim, the trial court awarded $32,400 in attorney fees and $2,455.24 in costs. II. Analysis ¶ 15 Nakauchi appeals the trial court’s order awarding her attorney fees and costs, arguing that the court abused its discretion when it calculated its award. We agree. A. The Trial Court Abused Its Discretion in Calculating Nakauchi’s Attorney Fees and Costs Award ¶ 16 On appeal, Nakauchi contends that the trial court abused its discretion when it calculated an attorney fees award that was eighty percent below the requested amount and further did not award the full costs requested. We agree. 1. Standard of Review and Applicable Legal Principles ¶ 17 We review the reasonableness of a trial court’s award of attorney fees and costs pursuant to 42 U.S.C. § 1988 for an abuse of discretion. Deighton v. City Council, 3 P.3d 488, 490 (Colo. App. 
9 2000). “A trial court abuses its discretion when its decision is manifestly arbitrary, unreasonable, unfair, or based on a misapplication of the law.” Black v. Black, 2020 COA 64M, ¶ 118. Further, “[t]he trial court must make findings sufficient to allow meaningful appellate review of an award.” Brody v. Hellman, 167 P.3d 192, 198 (Colo. App. 2007). ¶ 18 Generally, an award of attorney fees can’t be recovered “absent an express statute, court rule, or private contract providing for them.” Id. A prevailing plaintiff in a federal civil rights action may, at the court’s discretion, recover reasonable attorney fees and costs. 42 U.S.C. § 1988(b); Ramos v. Lamm, 713 F.2d 546, 559 (10th Cir. 1983), disapproved on other grounds by Pennsylvania v. Del. Valley Citizens’ Council for Clean Air, 483 U.S. 711 (1987); see also Beaver Creek Prop. Owners Ass’n v. Bachelor Gulch Metro. Dist., 271 P.3d 578, 581 (Colo. App. 2011). If an attorney fees award is authorized by federal statute, federal law governs the procedures for computation of those fees. Catlin v. Tormey Bewley Corp., 219 P.3d 407, 410 (Colo. App. 2009). ¶ 19 To calculate the attorney fees rate, a court “starts with calculating the lodestar amount by multiplying the number of hours 
10 reasonably spent by counsel for the party seeking the fees times a reasonabl[e] hourly rate.” Id. at 411 (citing Case v. Unified Sch. Dist. No. 233, 157 F.3d 1243, 1249 (10th Cir. 1998)). After the lodestar amount is calculated, the court may then adjust the lodestar rate either up or down by accounting for several factors. Id. The lodestar factors a court considers under federal law are similar, but not identical, to those under state law. ¶ 20 For example, both state and federal law consider: (1) the labor and time required; (2) the difficulty and novelty of the legal questions involved; (3) the skill requisite to perform the legal services properly; (4) the preclusion of the attorney’s ability to take on other cases; (5) the fee customarily charged; (6) time limitations imposed by the client or circumstances involved; (7) the amount involved and the results obtained; (8) the experience, reputation, and ability of the attorneys; (9) the nature and length of the professional relationship; (10) awards in similar cases; and (11) whether the fee is fixed or contingent. Hensley v. Eckerhart, 461 U.S. 424, 430 n.3 (1983); Colo. RPC 1.5(a) (which frames the above list as eight factors). 
11 ¶ 21 But importantly, federal law also requires a court to consider the “undesirability” of the case. Hensley, 461 U.S. at 430 n.3. The “undesirability” factor considers that “[o]ftentimes” a civil rights attorney’s “decision to help eradicate discrimination is not pleasantly received by the community or [the attorney’s] contemporaries. This can have an economic impact on [the attorney’s] practice which can be considered by the Court.” Johnson v. Ga. Highway Exp., Inc., 488 F.2d 714, 719 (5th Cir. 1974), abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87 (1989). ¶ 22 Moreover, certain “out-of-pocket costs not normally absorbed as part of law firm overhead may be reimbursed under 42 U.S.C. § 1988.” Ramos, 713 F.2d at 559 (stating that costs such as photocopying, postage, telephone charges, books, and overtime secretarial work are normally absorbed as overhead and not recoverable as costs). 2. Application a. Attorney Fees ¶ 23 Nakauchi contends that the trial court abused its discretion when it arbitrarily cut Nakauchi’s requested attorney fees award by 
12 eighty percent. Specifically, she contends that the trial court erred by (1) lowering the hourly billing rate sought by her lead counsel; (2) arbitrarily awarding only 130 hours for trial work; (3) arbitrarily cutting hours billed for appellate proceedings without an adequate basis; (4) making assumptions about the fees sought that weren’t grounded in the evidence presented to the court; (5) criticizing her lead counsel for billing for hours that weren’t actually billed; (6) presuming necessary work wasn’t required; (7) reducing compensable hours as a penalty against her lead counsel; (8) applying the wrong legal test to determine the hourly rate and only considering one of eight factors of the legal test; (9) concluding that the twenty-five hours billed for co-counsel’s time wasn’t “reasonably necessary”; (10) not awarding attorney fees for post-
trial motions; and (11) declining to award attorney fees for Nakauchi’s statutory claim. We agree the trial court abused its discretion. We reach this conclusion for four reasons. ¶ 24 As a threshold matter, the trial court applied the wrong legal standard to calculate the lodestar amount, which is an abuse of discretion. Black, ¶ 118. When determining the applicable lodestar amount, the trial court relied on state law rather than federal law. 
13 Compounding this error, the trial court seemingly considered only the trial “experience,” or lack thereof, of Nakauchi’s lead counsel, a single factor in the eight-factor state legal test. Indeed, the trial court didn’t address or make findings regarding any other factor in its order. ¶ 25 But because Nakauchi sought relief under the federal civil rights statutes, federal law governs the analysis. See Catlin, 219 P.3d at 410. And the federal analysis includes additional factors that the court must consider, such as the undesirability of the case. Hensley, 461 U.S. at 430 n.3. Although the court cited the state factors, it’s otherwise unclear whether the court considered any factors outside of Nakauchi’s lead counsel’s experience in civil rights litigation when determining the lodestar amount, including “the novelty and difficulty of the questions,” “the time and labor required,” “whether the fee is fixed or contingent,” “the preclusion of [other] employment by the attorney due to acceptance of the case,” and “the amount involved and the results obtained.” Id. These omissions are glaring in light of the undisputed fact that Nakauchi prevailed in two appeals and succeeded in obtaining statewide injunctive relief. 
14 ¶ 26 Second, the trial court based its determination that a significant number of billed hours were not recoverable on a mischaracterization of the record. This was an abuse of discretion. E-470 Pub. Highway Auth. v. Revenig, 140 P.3d 227, 230-31 (Colo. App. 2006) (“In assessing whether a trial court’s decision is manifestly unreasonable, arbitrary, or unfair, we ask not whether we would have reached a different result but, rather, whether the trial court’s decision fell within a range of reasonable options.”). In criticizing what it believed were counsel’s excessive billings, the trial court opined that Nakauchi’s lead counsel unreasonably billed for time spent (1) “attempting to secure a transcript of the trial via an Open Records Acts request”; (2) twice filing requests for clarification while the parties awaited a final ruling; (3) attempting to supplement the record while the case was on appeal and the trial court lacked jurisdiction to do so; and (4) drafting an unsuccessful certiorari petition in the first appeal and reply to the defendants’ certiorari petition, billing over twenty hours per filing. ¶ 27 But the record contradicts the court’s findings. The record makes clear that Nakauchi’s lead counsel never sought reimbursement for his time spent on the open records requests 
15 because they appear as “zero” hour entries on the billing statements submitted to the court. Similarly, the record doesn’t support the conclusion that Nakauchi’s lead counsel billed for his requests for clarification because there are no billing records submitted in connection with either motion. Nakauchi’s lead counsel also didn’t bill for any of his time spent on correcting his mistake concerning the motion to supplement the record while the second appeal was pending — in fact, the submitted billing records indicate that lead counsel billed zero hours for work on this motion, explicitly noting that he “[c]hanged to no charge because it was [his] mistake.” Finally, the billing records support the conclusion that Nakauchi’s lead counsel billed approximately twenty-eight hours for both the certiorari petition in the first appeal and his reply in opposition to the defendants’ certiorari petition, not “nearly [twenty] more hours each,” as the trial court stated. ¶ 28 Third, it was also arbitrary for the trial court to decline to award any attorney fees for Nakauchi’s co-counsel’s work on the basis that co-counsel “was not reasonably necessary to the case.” Throughout its order, the trial court criticized Nakauchi’s lead counsel for his lack of civil rights litigation and trial experience — 
16 using these findings to support a reduction in lead counsel’s recoverable billing rate — and then declined to award any attorney fees for the engagement of a more experienced litigator whom lead counsel consulted and brought on to assist in trial matters. See Colo. RPC 1.1 cmt. 2 (“Competent representation can also be provided through the association of a lawyer of established competence in the field in question.”). The trial court doesn’t explain, or make sufficient findings on, Brody, 167 P.3d at 198, why it deemed that co-counsel wasn’t reasonably necessary, particularly given the court’s findings regarding lead counsel’s lack of civil rights litigation experience. ¶ 29 Fourth, from the trial court’s order, we simply can’t determine how the court arrived at its conclusion that Nakauchi’s lead counsel could recover only one hundred thirty hours for trial work and twenty-five hours for each appeal in this case. While the court explained that it reduced the fee recovery by ten percent because it determined that Nakauchi couldn’t recover attorney fees for work spent unsuccessfully litigating against the county defendants, that doesn’t account for the full scope of the reduction, nor did the court explain how each of the identified deficiencies impacted the award. 
17 Similarly, the trial court made no findings or conclusions regarding Nakauchi’s requested reimbursement for paralegal time and whether, if at all, the eighteen and a half paralegal hours Nakauchi’s attorney sought reimbursement for were subtracted from the 600 hours Nakauchi sought for lead counsel’s time. Simply put, the trial court did not make findings sufficient for us to meaningfully review its basis for the award, see id., and we therefore must remand it for further proceedings. ¶ 30 Accordingly, we reverse the trial court’s award of attorney fees and remand the case to recalculate the lodestar amount under the federal guidelines and to recalculate the amount of billed hours Nakauchi can reasonably recover, including whether Nakauchi’s lead counsel can recover attorney fees for co-counsel and his paralegal. b. Costs ¶ 31 Nakauchi contends that the trial court also erred by declining to award $455.25 for a second copy of a transcript. We agree. 
18 ¶ 32 Generally, costs normally billed to a client are recoverable as part of a fee award pursuant to 42 U.S.C. § 1988,
3 so long as “such expenses are usually charged separately in the area.” Sussman v. Patterson, 108 F.3d 1206, 1213 (10th Cir. 1997) (quoting Ramos, 713 F.2d at 559). Costs that are generally recoverable under 42 U.S.C. § 1988 include fees for reasonably necessary transcripts. See Vialpando v. Johanns, 619 F. Supp. 2d 1107, 1130 (D. Colo. 2008) (rejecting plaintiff’s requests for cost of deposition transcripts because she hadn’t “shown that these witnesses had [relevant] testimony” and because a party can’t “recover expenses incurred on [unsuccessful] claims”). Additionally, where local rules allow for the reimbursement of a single transcript, courts can take judicial notice that the company producing the transcript automatically produces two copies and award costs for both copies. Cf. Coal. to Save Our Child. v. State Bd. of Educ., 901 F. Supp. 824, 833 (D. Del. 1995). ¶ 33 The trial court determined that Nakauchi couldn’t recover costs for a second copy of the trial transcript because the court 3 On appeal, neither party challenges the notion that 42 U.S.C. § 1988(b) applies to the award of costs in this case rather than C.R.C.P. 54(d). Therefore, for the purpose of this appeal, we accept that as true. 
19 believed “Nakauchi [was] seeking to recover twice for the trial transcript.” On appeal, Nakauchi contends that the trial court mischaracterized the transcript request because the transcript company required that she purchase two copies of the trial transcripts at $455.25 per copy. ¶ 34 We conclude that the trial court abused its discretion when it declined to award all costs incurred for the trial transcript. The record supports the conclusion that Nakauchi had to purchase two copies of the trial transcript — one for her and one for the court of appeals — as part of the record for the second appeal, and thus the two copies are recoverable if both are reasonably necessary to the litigation. See Vialpando, 619 F. Supp. 2d at 1130. From the trial court’s order, it’s unclear whether the trial court considered this fact when it declined to award the transcript fee twice because the order stated that, in the court’s opinion, “Nakauchi is seeking to recover twice for [the] trial transcripts.” Furthermore, the trial court could take judicial notice that the transcript company automatically produced two copies and award reimbursement for both copies as a result. Coal. to Save Our Child., 901 F. Supp. at 833. 
20 ¶ 35 Accordingly, we reverse the trial court’s award of costs and remand the case for further proceedings to determine whether Nakauchi can recover $455.25 for a second copy of the transcript. B. Attorney Fees and Costs on Appeal ¶ 36 Nakauchi requests an award of her attorney fees and costs incurred on appeal pursuant to 42 U.S.C. §§ 1983 and 1988, as the prevailing party on appeal. Section 1988 allows the court, in its discretion, to award reasonable attorney fees to the prevailing party in an action to enforce a provision of § 1983. We conclude that, as the prevailing party, Nakauchi is entitled to her reasonable attorney fees and costs incurred in this appeal. We remand for the trial court to determine the amount of such fees and costs. See C.A.R. 39.5; see also Mahaney v. City of Englewood, 226 P.3d 1214, 1221 (Colo. App. 2009). C. Reassignment to a Different Judge on Remand ¶ 37 Finally, Nakauchi requests that this case be assigned to a new judge on remand because of the significant delay, among other reasons. Based on our review of the record, we grant this request. See, e.g., State ex rel. Weiser v. Ctr. for Excellence in Higher Educ., Inc., 2021 COA 117, ¶ 120 (observing that a court’s “significant 
21 delay in issuing the court’s order” may “require[] a new judge to take over the case on remand to ‘preserve the appearance of justice’” (quoting United States v. Aragon, 922 F.3d 1102, 1113 (10th Cir. 2019))), aff’d in part and rev’d in part on other grounds, 2023 CO 23. And we conclude that reassignment won’t result in a significant inefficiency of judicial resources due to “waste and duplication out of proportion to any gain in preserving the appearance of fairness.” Aragon, 922 F.3d at 1113 (quoting Mitchell v. Maynard, 80 F.3d 1433, 1450 (10th Cir. 1996)). While the original trial judge is surely familiar with the course of this litigation, our reversal of the fees and costs award in its entirety will require a fresh look at Nakauchi’s request for attorney fees and costs applying the proper standard. A newly assigned judge won’t be at a significant disadvantage in performing this task. III. Disposition ¶ 38 The trial court’s order is reversed, and the case is remanded for further proceedings consistent with this opinion before a new judge. In its discretion, the trial court on remand may consider additional evidence on any remanded issue. JUSTICE MARTINEZ and JUDGE TAUBMAN concur.